UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

ASSOCIATED BUILDERS AND CONTRACTORS FLORIDA FIRST COAST
CHAPTER, AND ASSOCIATED BUILDERS AND CONTRACTORS,

Plaintiffs-Appellants,

v.

GENERAL SERVICES ADMINISTRATION, ET AL.,

Defendants-Appellees.

On Appeal from the United States District Court
for the Middle District of Florida
The Honorable Wendy Berger, Presiding
**3:24-cv-318-WWB-MCR**

**PLAINTIFFS-APPELLANTS' OPENING BRIEF**

Kimberly Doud
Littler Mendelson, P.C.
111 N Orange Ave., Ste. 1750
Orlando, FL 32801
Telephone:  407-393-2951
Facsimile: 407-641-9263
kdoud@littler.com

Maurice Baskin
Littler Mendelson, P.C.
815 Connecticut Ave NW, Ste. 400
Washington, DC 20006
Telephone: 202.772.2526
Facsimile:   202.814.0011
mbaskin@littler.com

*Attorneys for Plaintiffs-Appellants*

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Plaintiffs-Appellants ASSOCIATED BUILDERS AND CONTRACTORS, and ASSOCIATED BUILDERS AND CONTRACTORS FIRST FLORIDA CHAPTER (hereafter collectively "ABC" or "Appellants"), submit the following list of the trial judge, all attorneys, persons, associations of persons, firms, partnerships, and corporations with any known interest in the outcome of this appeal, including subsidiaries, conglomerates, affiliates and parent corporations, any publicly held company that owns 10% or more of the party's stock, and other identifiable legal entities related to a party. None of the companies identified below are publicly traded, nor are they owned by any publicly traded company.

1. American-Electrical Contracting, Inc., *Affiant for Appellants-Plaintiffs*;

2. Associated Builders and Contractors, *Appellant-Plaintiff*;

3. Associated Builders and Contractors First Florida Chapter, *Appellant-Plaintiff*;

4. Baskin, Maurice, *Counsel for Appellants-Plaintiffs*;

5. Bennett, Michael, *Affiant for Appellants-Plaintiffs*;

6. Berger, Hon. Wendy, *United States District Judge*;

7. Blum, Matthew C., current FAR Council Chair, Acting Administrator, Office of Federal Procurement Policy, Office of Management and Budget, in his official capacity, *Appellee-Defendant*;

8. Brasfield & Gorrie, LLC, *Affiant for Appellants-Plaintiffs*;

9. Brubeck, Ben, *Affiant for Appellants-Plaintiffs*;

10. Cianbro Companies, the, *Affiant for Appellants-Plaintiffs*;

11. Clark, William F., Director, Office of Government-Wide Acquisition Policy, Office of Acquisition Policy, Office of Government-Wide Policy, General Services Administration, in his official capacity, *Appellee-Defendant*;

12. Doud, Kimberly, *Counsel for Appellants-Plaintiffs*;

13. Environmental Chemical Corporation, *Affiant for Appellants-Plaintiffs*;

14. Ferguson, Matthew, *Affiant for Appellants-Plaintiffs*;

15. General Services Administration, *Appellee-Defendant*;

16. Gerardi, Michael, *Former Counsel for Appellees-Defendants*;

17. Goodnature, Taisa, *Former Counsel for Appellees-Defendants*;

18. Harada, Christine J., former FAR Council Chair, Senior Advisor to the Deputy Director for Management, Office of Federal Procurement Policy, Office of Management and Budget, in her official capacity, *Appellee-Defendant*;

19. Haskell Company, the, *Affiant for Appellants-Plaintiffs*;

20. Hensel Phelps Construction Co., *Affiant for Appellants-Plaintiffs*;

21. Hoffman, Karin Tucker, *Affiant for Appellants-Plaintiffs*;

22. Interstate Sealant & Concrete, Inc., *Affiant for Appellants-Plaintiffs*;

23.     Jackson, Karla S., Assistant Administrator for Procurement, National Aeronautics and Space Administration, in her official capacity, *Appellee-Defendant*;

24.     JCM Associates, Inc., *Affiant for Appellants-Plaintiffs*;

25.     Koses, Jeffrey A., Senior Procurement Executive, General Services Administration in his official capacity, *Appellee-Defendant*;

26.     Laurie, James P., *Affiant for Appellants-Plaintiffs*;

27.     M.C. Dean, Inc., *Affiant for Appellants-Plaintiffs*;

28.     McReady III, James C., *Affiant for Appellants-Plaintiffs*;

29.     Murray, Brian, *Affiant for Appellants-Plaintiffs*;

30.     Pattee, James, *Affiant for Appellants-Plaintiffs*;

31.     Sment, Cheryl, *Affiant for Appellants/Plaintiffs*;

32.     Starnes, Justin, *Affiant for Appellants-Plaintiffs*;

33.     Tenaglia, John M., Principal Director, Defense Pricing and Contracting, U.S. Department of Defense, in his official capacity, *Appellee-Defendant*;

34.     Vought, Russell, current Director of Office of Management and Budget, in his official capacity, *Appellee-Defendant*;

35.     Winik, Daniel, Counsel for *Appellees-Defendants*;

36.     Yencarelli, Dave, *Affiant for Appellants-Plaintiffs*;

37.     Young, Shalanda, former Director of Office of Management and Budget, in her official capacity, *Appellee-Defendant*;

Pursuant to Eleventh Circuit Rule 26.1-1, 26.1-2 and 26.1-3, counsel of record for ABC hereby state as follows:

- Publicly traded company or corporation that has an interest in the outcome of the case or appeal: None.

- Parent Corporations: None.

- Publicly Held Companies Owning Ten Percent (10%) or More of Stock: None.

## STATEMENT REGARDING ORAL ARGUMENT

ABC respectfully requests expedited oral argument. This appeal involves constitutional and statutory rights and government overreach and could create important precedent in this Circuit. Oral argument will aid the Court in evaluating the parties' arguments.

# TABLE OF CONTENTS

I. STATEMENT OF JURISDICTION ...............................................................xi

II. STATEMENT OF THE ISSUES ..................................................................1

III. STATEMENT OF THE CASE .....................................................................2

    A.    The Course of Proceedings and Dispositions in the Court Below .......2
    B.    Statement of the Facts ...........................................................................3
    C.    Statement of the Standard or Scope of Review for Each
          Contention ..........................................................................................12

IV. SUMMARY OF ARGUMENT ..................................................................13

V. ARGUMENT AND CITATIONS OF AUTHORITY ................................15

    A.    Preliminary Injunction Standard ........................................................15
    B.    The District Court Abused Its Discretion When It Concluded
          ABC Did Not Establish a Substantial Threat of Irreparable
          Harm on Their CICA Claim ................................................................16
    C.    The District Court Abused Its Discretion When It Concluded
          ABC Did Not Establish a Substantial Likelihood of Success on
          the Merits Regarding Their FPASA Claim .........................................24
    D.    The District Court Abused Its Discretion in Declining to
          Consider ABC's First Amendment Claim ..........................................27
    E.    The District Court Abused Its Discretion in Failing to Address
          ABC's Remaining Arguments for Why the PLA Mandate Is
          Unlawful .............................................................................................30
    F.    The District Court Abused Its Discretion in Failing to Address
          the Remaining "Public Interest" Factors, Which Further
          Compel Preliminary Injunctive Relief ...............................................33
    G.    The District Court Abused Its Discretion in Failing to Order
          Injunctive Relief From the PLA Mandate to ABC's Members .........35

VI. CONCLUSION.........................................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama Ass'n of Realtors v. HHS,*
  141 S. Ct. 2485 (2021)................................................................25

*Bldg & Const. Trades Council v. Associated Builders and Contractors,*
  507 U.S. 218 (1993)………………………………………………...32

*Bldg. & Const. Trades Dep't, AFL-CIO v. Allbaugh,*
  295 F.3d 28 (D.C. Cir. 2002)......................................................18

*Boulan South Beach Master Ass'n v. Think Props., LLC,*
  617 Fed. App'x 931 (11th Cir. 2015) ..........................................22

*Chamber of Commerce v. Reich,*
  74 F.3d 1322 (D.C. Cir. 1996)....................................................25

*Clark Construction Co. v. Pena,*
  895 F. Supp. 1483 (M.D. Ala. 1995)...........................................20

*Collins & Co., General Contractors, Inc. v. Claytor,*
  476 F. Supp. 407 (N.D. Ga. 1979)..............................................19

*E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imps., Inc.,*
  756 F.2d 1525 (11th Cir. 1985) ..................................................22

*FDA v. Brown & Williamson*
  529 U.S. 120 (2000)....................................................................25

*Foremost Signature Ins., MI v. Silverboys, LLC,*
  793 Fed. App'x 962 (11th Cir. Dec. 4, 2019)..........................2, 12

*Georgia v. President,*
  46 F. 4th 1283 (11th Cir. 2022)....................15, 16, 20, 24-27, 33-36

*H.K. Porter v. NLRB,*
  397 U.S. 99 (1970)......................................................................32

*Knox v. SEIU, Local 1000,*
    567 U.S. 298 (2012)..................................................................28, 29

*LaCroix v. Town of Fort Myers Beach,*
    38 F.4th 941 (11th Cir. 2022) ...........................................13, 30, 35

*Louisiana v. Biden,*
    55 F.4th 1017 (5th Cir. 2022) ....................................................25

*Louisiana v. Biden,*
    575 F. Supp. 3d 680 (W.D. La. 2021) ........................................32

*Mark Dunning Indus. v. Perry,*
    890 F. Supp. 1504 (M.D. Ala. 1995)......................................19, 34

*Martin v. Wrigley,*
    540 F. Supp. 3d 1220 (N.D. Ga. 2021)........................................28

*McKnight v. Constr. Co. v. Perry,*
    888 F. Supp. 1178 (S.D. Ga. 1994) ............................................20

*MVL USA, Inc. v. United States,*
    174 Fed. Cl. 437 (Fed. Cl. 2025) ...........................................2, 23

*MVL USA, Inc. v. United States,*
    2025 U.S. Claims LEXIS 1153 (Fed. Cl. May 6, 2025)..................23

*Nat'l Maritime Union v. Commander, Military Sealift Command,*
    824 F.2d 1228 (D.C. Cir. 1987).................................................20

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville,*
    508 U.S. 656 (1993).........................................................18, 19, 22

*North America's Building Trades Unions v. Dep't of Defense,*
    Civil Action No. 25-cv-01070-RC (May 16, 2025) ...................12, 24

*Otto v. City of Boca Raton,*
    981 F.3d 854 (11th Cir. 2020) .............................................13, 30

*Palmer v. Braun,*
    287 F.3d 1325 (11th Cir. 2002) .................................................34

*Perry v. Sindermann*,
 408 U.S. 593 (1972)..........................................................................27

*Road-Con, Inc. v. City of Philadelphia*,
 120 F.4th 346 (3d Cir. 2024) ...........................................................28

*Scott v. Roberts*,
 612 F.3d 1279 (11th Cir. 2010) ..................................................13, 30

*Sierra Club v. Norton*,
 207 F. Supp. 2d 1310 (S.D. Ala. 2002) ...........................................16

*Southern Offshore Fishing Ass'n v. Daley*,
 995 F. Supp. 1411 (M.D. Fla. 1998)..................................................31

*State v. Nelson*,
 576 F. Supp. 3d 1017 (M.D. Fla. 2021)......................................19, 24

*United States v. Askins & Miller Orthopaedics, PA*,
 924 F.3d 1348 (11th Cir. 2019) ........................................................22

*West Virginia v. EPA*,
 142 S. Ct. 2587 (2022)......................................................................25

*White v. Sch. Bd. of Hillsborough County*,
 2009 U.S. App. LEXIS 1532 (11th Cir. Jan. 27, 2009)....................28

*Xianfeng Wang v. P'ships*,
 2024 U.S. Dist. LEXIS 111767 (M.D. Fla. Jun. 25, 2024) ..............32

**Statutes**

5 U.S.C. § 551 *et seq.*................................................................................xi

28 U.S.C. § 1292 ........................................................................................xi

28 U.S.C. § 1331 ........................................................................................xi

29 U.S.C. § 151 *et seq.*..............................................................................xi

40 U.S.C. § 101 *et seq.*.........................................................................xi, 24

41 U.S.C. § 1301 *et seq.*............................................................................xi

41 U.S.C. § 3101 ................................................................26

41 U.S.C. § 3301 *et seq.*.............................................. xi, 16, 26

41 U.S.C. § 3703(c) ...........................................................26

**Other Authorities**

Executive Order 14,064, Use of Project Labor Agreements for Federal
    Construction Projects, 87 Fed. Reg. 7363 (Feb. 9, 2022) ..........................1, 4, 5

Federal Acquisition Regulation: Use of Project Labor Agreements for
    Federal Construction Projects, 88 Fed. Reg. 88708 (Dec. 22, 2023)
    .............................................................1, 2, 3, 5, 7-11, 17, 25, 28-29, 31

# I.    STATEMENT OF JURISDICTION

ABC has alleged Defendants-Appellees violated the Competition in Contracting Act ("CICA"), 41 U.S.C. § 3301; the Federal Property and Administrative Services Act ("FPASA"), 40 U.S.C. § 101 *et seq.*; the Office of Federal Procurement Policy Act ("OFPP"), 41 U.S.C. § 1301 *et seq.*; the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*; the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*; and the First Amendment of the U.S. Constitution. Therefore, the district court below, the U.S. District Court for the Middle District of Florida, had jurisdiction under 28 U.S.C. § 1331.

This Court has jurisdiction under 28 U.S.C. § 1292 because ABC seeks review of an interlocutory order denying a motion for preliminary injunction from a U.S. District Court.

The district court entered its interlocutory decision denying ABC's Motion for Preliminary Injunction on March 28, 2025. ABC timely filed this Notice of Appeal on April 22, 2025. This Court subsequently granted ABC's motion to expedite consideration of the appeal on May 20, 2025.

## II. STATEMENT OF THE ISSUES

1. Whether the district court erred in failing to award preliminary injunctive relief to ABC against Executive Order 14,063 ("EO"), "Use of Project Labor Agreements for Federal Construction Projects," issued by President Joseph Biden on Feb. 4, 2022, 87 Fed. Reg. 7363 (Feb. 9, 2022); as implemented by the Final Rule having the same title, promulgated by the Federal Acquisition Regulatory ("FAR") Council, 88 Fed. Reg. 88708 (Dec. 22, 2023) (the "PLA Rule"), and by the Office of Management and Budget's ("OMB") Guidance Memorandum M-24-06 ("Memorandum"), which unlawfully mandate project labor agreements on all federal construction projects exceeding $35 million;

2. Whether the district court erred in failing to find ABC and their members are suffering irreparable harm;

3. Whether the district court erred in finding ABC was likely to succeed only on the merits of their CICA claim, without finding similar likelihood of success as to their FPASA claim, and without even addressing ABC's additional claims, including their First Amendment claim, which further should have compelled a finding of irreparable harm.

4. Whether the district court abused its discretion in failing to address the remaining "public interest" factors, which further compel preliminary injunctive relief.

## III. STATEMENT OF THE CASE

### A. The Course of Proceedings and Dispositions in the Court Below

On March 28, 2024, ABC filed suit in the Middle District of Florida, where Appellant-Plaintiff ABCFFC is located, seeking a judicial declaration that the EO, OMB Memorandum, and PLA Rule together have effectively created an unlawful PLA mandate on large-scale federal construction contracts, and seeking to enjoin this unlawful government action. (Dist. Doc. 1).[1] On April 26, 2024, ABC filed its Motion for Preliminary Injunction, with attached affidavits, establishing their likelihood of success on the merits of their claims that the PLA mandate violates their statutory rights under the CICA, the FPASA, the OFPP, the NLRA, the APA, and the First Amendment. (Dist. Doc. 18).

While ABC's Preliminary Injunction Motion was pending, on January 21, 2025, the Court of Federal Claims ("COFC") ruled on consolidated bid protests challenging multiple projects on which the PLA mandate had been imposed.[2] *See MVL USA, Inc. v. United States*, 174 Fed. Cl. 437, 441, 453-54 (Fed. Cl. 2025). The COFC ruled, *inter alia*, that the PLA mandate imposed on the protested projects violated the CICA because it excluded offerors regardless of their ability to perform

---

[1] "Dist. Doc." refers to the district court's docket.
[2] This Court may take judicial notice of materials from other cases as public record under Federal Rule of Evidence 201(b)(2). *See Foremost Signature Ins., MI v. Silverboys, LLC*, 793 Fed. App'x 962, 966 (11th Cir. Dec. 4, 2019).

the contract, even when market research suggested that the inclusion of a PLA requirement in the solicitation would reduce competition, economy, and efficiency and increase prices. *See id*. The district court requested supplemental briefing based on the *MVL* decision on February 25, 2025, which the parties submitted on March 4, 2025. (Dist. Doc. Nos. 51, 54, 55).

On March 28, 2025, the district court issued its ruling on ABC's Motion for Preliminary Injunction. (App. Doc. 1-3).[3] The district court found it "highly likely" that ABC will succeed on the merits of their claim that the PLA mandate violates the CICA. (App. Doc. 1-3, at 10-12) ("Simply put, the evidence before the Court is that Defendants' course of dealing has rendered the exceptions to the PLA Rule 'functionally meaningless.'"). The district court nevertheless denied ABC's request for preliminary injunctive relief solely on the erroneous ground that ABC's motion failed to demonstrate irreparable harm to ABC's government construction contractor and/or subcontractor members. (*Id*. at 16-17).

**B.    Statement of the Facts**

Plaintiff ABCFFC is a Florida corporation headquartered in Jacksonville, FL. Its primary mission is to advocate for fair and open competition for construction work, including federal construction projects, on behalf of its 180 member companies. (Dist. Doc. 18, Ex. 15, Tucker Aff. ¶ 2). ABCFFC shares this mission

---

[3] "App. Doc." refers to this Court's docket.

with ABC National, which represents more than 23,000 contractors in Florida and nationwide. (Dist. Doc. 18, Ex. 14 Brubeck Aff. ¶ 1).

President Biden issued the challenged EO on February 4, 2022. *See* 87 Fed. Reg. 7363. The EO mandated that federal agencies "shall" require contractors and subcontractors to negotiate or become parties to PLAs for federal construction contracts valued at $35 million or more. 87 Fed. Reg. 7363, §§ 2-4.

Prior to the EO, no President claimed authority to require federal construction contractors to sign PLAs with unions as a condition of performing work on federal contracts. (*See* Dist. Doc. 18, Ex. 1, ABC Comments, at 35). Under the previous Executive Order 13502 "encouraging" – but not mandating—PLAs on federal projects above $25 million between fiscal years 2009 and 2024,[4] just 12 federal contracts valued at $1.26 billion contained a PLA out of 3,222 contracts of $25 million or more valued at a total of $238 billion. This means federal procurement officials saw no benefit or need to impose PLAs to increase economy or efficiency on more than 99% of federal construction contracts of $25 million or more. (*See* Dist. Doc. 18, Ex. 14 ¶ 15; Ex. 1, at 18).

Nevertheless, under the EO, negotiated PLAs must prohibit strikes, lockouts,

---

[4] During this same period ABC members won and successfully performed 54% of the $205.56 billion in total value of direct prime construction contracts exceeding $35 million awarded by federal agencies during fiscal years 2009-2023. (Dist. Doc. 18, Ex. 14 ¶ 15).

and other comparable job disruptions; include labor dispute resolution procedures; provide for labor-management cooperation on relevant issues; and otherwise comply with applicable law. 87 Fed. Reg. 7363 § 4. Only "senior agency procurement officials" may grant exceptions to the requirement after finding a PLA would not advance the government's interest in economy and efficiency; would "substantially reduce" bidders "as to frustrate full and open competition"; or would otherwise be inconsistent with applicable law. *Id.* § 5.

On December 22, 2023, following notice and public comment (including comments in opposition by Appellant ABC), the FAR Council published the final PLA Rule implementing the unlawful EO. *See* 88 Fed. Reg. 88708. The PLA Rule again requires contractors and subcontractors to enter PLAs as a condition of being awarded work on federal construction projects valued at more than $35 million, absent extremely narrow exceptions. *See id.* at 88709.

On December 18, 2023, OMB issued—without notice and comment—the OMB Memorandum, purporting to provide guidance to agencies regarding exceptions to the PLA Rule, with the force and effect of law. (*See* Dist. Doc. 18, Pls.' Mot. for Preliminary Injunction, Ex. 3, Memorandum M-24-06). The OMB Memorandum acknowledges "many PLAs require contractors to use the union's hiring hall for referrals," and acknowledges PLAs could create "unintended barriers to entry." (Dist. Doc. 18, Ex. 3 at 4-5). The OMB Memorandum nevertheless stated

"[a] likely reduction in the number of potential offerors is not, by itself, sufficient to except a contract from coverage" and further declared: "two or more qualified offers is sufficient to provide adequate price competition for negotiated contracts." (*See* Dist. Doc. 18, Ex. 3, at 6-7).

As explained in the numerous undisputed record affidavits submitted by contractors and subcontractors who are members of ABCFFC and/or ABC,[5] the restrictive PLA mandate irreparably harms them in the bidding process by erecting barriers making it more difficult for ABCFFC's and ABC's members to fairly compete for and be awarded government contracts.

As one of many examples in the record, ABCFFC member **Haskell,** which "typically performs work exceeding $50 million in revenue" from federal projects exceeding $35 million, was aware of numerous upcoming federal projects requiring

---

[5] **The Haskell Company**, member of ABCFFC and ABC ("Haskell") (Dist. Doc. 18, Ex. 4, Ferguson Aff.); **Brasfield & Gorrie, LLC**, member of ABCFFC and ABC ("B&G") (Dist. Doc. 18, Ex. 5, Murray Aff.); **Hensel Phelps Construction Co.**, member of ABCFFC and ABC ("Hensel Phelps") (Dist. Doc. 18, Ex. 6, Starnes Aff.); **The Cianbro Companies**, ABC member ("Cianbro") (Dist. Doc. 18, Ex. 7, Bennett Aff.); **American-Electrical Contracting, Inc.**, member of ABCFFC and ABC ("American-Electrical") (Dist. Doc. 18, Ex. 8, Yencarelli Aff.); **MC Dean, Inc.**, member of ABC ("MC Dean") (Dist. Doc. 18, Ex. 9, Pattee Aff.); **Interstate Sealant & Concrete, Inc.**, member of ABC ("Interstate Sealant") (Dist. Doc. 18, Ex. 10, Sment Aff.); **JCM Associates, Inc**., ABC member ("JCM") (Dist. Doc. 18, Ex. 12, McReady Aff.); **Environmental Chemical Corp.**, ABC member ("ECC") (Dist. Doc. 18, Ex. 13, Laurie Aff.). This is not by any means an exclusive list. ABC represents many more members nationwide who have been similarly harmed. (Dist. Docket 18).

a PLA under the new Rule. (Dist. Doc. 18, Ex. 4 ¶¶ 1-5). These included the NAVFAC SE MACC program in Jacksonville, the Marine Corp. Support Facility Blount Island Command, FL; and Fort Liberty, NC. Haskell wanted to bid on these projects but believed that the PLA Rule made it irreparably "inefficient and costly" to do so. (*Id.* ¶¶ 6-7). Haskell surveyed its subcontract partners, 73% of whom said they would not be interested in bidding on a PLA-covered project. (*Id.* ¶ 7). The "extreme...reduction of subcontractor participation" rendered Haskell's "risk of failure...extreme" and would have required it to submit bids with increased prices to account for "administrative burdens, lack of subcontractor competition," as federal projects are "firm-fixed price leaving no ability to clarify or revise pricing after award."[6] (*Id.*). Because Haskell's employees have never voted to unionize, forcing Haskell to associate with unions also infringes its constitutional freedom of association.[7] (*Id.* ¶ 8).

**B&G**, another contractor member of both ABCFFC and ABC, has "secured over $2 billion in federal contract awards" and has recently contracted to complete fifteen federal projects with contracts exceeding $35 million. (Dist. Doc. 18, Ex. 5 ¶¶ 1-4)[8]. B&G planned to bid for numerous similar projects; but following the PLA

---

[6] (*See also* Dist. Doc. 18, Ex. 5 ¶ 9); (Dist. Doc. 18, Ex. 6 ¶ 16).
[7] (*See also* Dist. Doc. 18, Ex. 6 ¶ 10); (Dist. Doc. 18, Ex. 8 ¶ 9); (Dist. Doc. 18, Ex. 9 ¶ 8).
[8] The General Services Administration recently named B&G as its first "biennial Construction Award" winner. *GSA celebrates first biennial Construction*

mandate, they required PLAs, including the Brownsville Texas Land Port of Entry (GSA), the NAVFAC Southeast multiple award project (Navy); the Auburn University USDA ARS Lab, and the Anniston Army Depot. B&G explained it "will not be able to confidently submit bids/proposals and will be forced to include significant contingency sums to account for uncertainties that union contractors and subcontractors do not face." (Dist. Doc. 18, Ex. 5 ¶ 10). B&G further observed unions hold significant leverage in PLA negotiations, which further "must be reflected by a contingency in our bid/proposal pricing"; indeed, under the PLA Rule unions need not execute PLAs at all nor "treat all contractors the same." (*Id.*).

Similarly, **Hensel Phelps**, which typically performs contracts on four government contracts exceeding $35 million each year in the SE Region, was aware of multiple upcoming projects on which it would have bid absent a PLA mandate. (Dist. Doc. 18, Ex. 6 ¶¶ 1-6). These included the Jacksonville NAVFAC MACC, the USDA Lab Annex at Auburn University, and projects at Patrick Space Force Base. (*Id.* ¶¶ 5-6).[9] **Cianbro**, an ABC member with a subsidiary, R.C. Stevens, that belongs to ABCFFC, further shared concerns about the PLA Rule. (Dist. Doc. 18,

---

*Award winner*, https://www.gsa.gov/about-us/newsroom/news-releases/gsa-celebrates-first-biennial-construction-award-w-02282024 (last visited, Mar. 8, 2024).

[9] As further discussed below, Hensel Phelps filed a successful bid protest in one of the cases consolidated as *MVL v. Department of Defense.* Hensel Phelps remains harmed by its inability to compete on a level playing field on numerous other projects and in other ways discussed below.

Ex. 7). Cianbro has bid on and been awarded five federal projects since 2020 that exceeded $35 million but believed a PLA mandate will disqualify it from securing work on future similar projects. (*Id.* ¶¶ 2-5). Another ABC member, **ECC**, attested to similar irreparable harm on upcoming government projects exceeding $35 million, including Fort Liberty, NC, Cherry Point, NC (two projects), Key West, FL, Eareckson AFB, AK (Dist. Doc. 18, Ex. 13). ECC was informed by the agencies that there would be no exemptions on these projects, even though no area unions offered any PLA terms needed to comply, and the contractor lacks sufficient subcontractors willing to work under a PLA. (*Id.*)

Additionally, numerous subcontractors and small business members of both association plaintiffs are being harmed by the PLA Rule. As a non-exclusive example, **American-Electrical**, an ABCFFC and ABC member, has performed electrical work on federal projects exceeding $35 million in value as a subcontractor. (Dist. Doc. 18, Ex. 8 ¶ 2). American-Electrical attested merit shop contractors would have asked it to participate on an upcoming $35 million-plus project in Jacksonville, FL, were it not for the PLA mandate; and further attested that as a subcontractor, it would not have the opportunity to negotiate PLA terms. (*Id.* ¶¶ 4, 6,14). **MC Dean**, a national electrical subcontractor, attested the general contractors with which it normally works would not bid for PLA-covered projects and union contractors would not consider it as a subcontract partner. (Dist. Doc. 18, Ex. 9 ¶¶ 1-5). **JCM**

**Associates**, an ABC member, has executed a CBA with a union unaffiliated with the North American Building Trades Union ("NABTU") and was concerned it cannot serve as a subcontractor on identified projects requiring PLAs because the general contractors it knows have entered PLAs only with NABTU-affiliated unions. (Dist. Doc. 18, Ex. 12 ¶¶ 2-3). Similarly, **Interstate Sealant**, an ABC member and 2010 Small Business Person of the Year for Wisconsin, attested to the adverse impact of the PLA Rule on her small business, noting harms similar to other ABC and ABCFFC members, exacerbated by the PLA Rule's failure to address small business concerns under the RFA and APA. (Dist. Doc. 18, Ex. 10 ¶ 10).

Although the PLA Rule purported to recognize limited exemptions from the federal PLA mandate, ABC and ABCFFC members in Jacksonville and around the country attested that federal agencies were repeatedly imposing the PLA mandate on solicitations issued since the PLA Rule went into effect, without any exemptions.[10] (*E.g.*, Dist. Doc. 18, Ex. 4 ¶ 6, Ex. 6 ¶ 5, Ex. 8 ¶ 5, Ex. 9 ¶ 3); (*see also* Dist. Doc. 18, Ex. 14, ¶¶ 7, 12-14).

As ABC's undisputed affidavits further attested, PLAs typically require contractors and subcontractors to agree to restrictive union hiring hall requirements,

---

[10] Contracting officers have further "refused to either produce, share and/or acknowledge the market research they are supposed to examine." (Dist. Doc. 18, Ex. 5 ¶ 11).

inefficient work rules, and seniority-based wage scales without regard to merit of experience, productivity, or safety performance; and require costly payments into union fringe benefit plans without regard to whether such benefits will vest with non-union workers whose coverage under the PLA is limited to the scope of the project. (Dist. Doc. 18, Ex. 14, ¶ 3; Ex, 1, at 7-8, 10-11).

ABC conducted a survey of its contractor members about government-mandated PLAs and the proposed version of the PLA Rule: 99% of respondents said they would be less likely to begin or continue bidding on federal contracts if the proposed rule was finalized and 97% said that government-mandated PLAs decrease economy and efficiency in government contracting. (Dist. Doc. 18. Ex. 14 ¶ 11, Ex. 1, at 15). 97% of respondents "who self-identified as small businesses said they would be less likely to bid on contracts if the rule is finalized" and "73% of small businesses stated PLAs decrease hiring of minority, women, veteran and disadvantaged business enterprises." (Dist. Doc. 18, Ex. 1, at 37).    Beyond the various projects ABC members identified in their affidavits, review of the public record, of which this Court may take judicial notice, reveals numerous unawarded solicitations that still contain a PLA mandate, for which ABC members are qualified to compete but are discriminated against in doing so by the continuing PLA mandate.[11]

_____

[11] *E.g., General Services Administration seeks a residential construction*

On February 7, 2025, following the *MVL* decision of the COFC, the Department of Defense ("DOD") issued a memorandum stating contracting officers should no longer require PLAs for large-scale projects. *Id.* at 4. On February 12, 2025, the General Services Administration ("GSA") issued a memorandum exempting certain projects from the PLA requirement. *Id.* In response to these narrow agency exceptions, NABTU filed suit seeking to compel DOD and GSA to enforce the EO. *See North America's Building Trades Unions v. Dep't of Defense*, Civil Action No. 25-cv-01070-RC, ECF No. 19, at 1-3 (May 16, 2025). The District Court for the District of Columbia granted NABTU's Motion for Preliminary Injunction on May 16, 2025. *See id.* at 33. The district court was not asked to address the legality of the EO or FAR Rule and did not do so. *Id.* at n.2.

## C. Statement of the Standard or Scope of Review for Each Contention

This Court "review[s] the decision to deny a preliminary injunction for abuse

---

*contractor for renovation of residential building for Armed Forces Retirement Home in Washington, DC.*, SAM.gov, https://sam.gov/opp/c4088106fa4a408a8972171e5eb8384d/view (last visited May 20, 2025); *National Aeronautics and Space Administration (NASA) Engineering and Mission Operations Facility (EMO) N278 at the Ames Research Center in Moffett Field, CA.*, SAM.gov, https://sam.gov/opp/c132ae56105d45a3927e602361c54896/view (last visited May 20, 2025). This Court may take judicial notice of public records, such contract opportunities listed on a federal government website, even when they "ha[ve] not been made part of the record" before the appellate court. *See Foremost*, 793 Fed. App'x at 966.

of discretion," which means the Court "review[s] the findings of fact of the district court for clear error and legal conclusions de novo." *Scott v. Roberts*, 612 F.3d 1279 (11th Cir. 2010). This Court has regularly reversed denials of preliminary injunctions, where such reversal was called for by the foregoing standard of review. *E.g.*, *LaCroix v. Town of Fort Myers Beach*, 38 F.4th 941, 945 (11th Cir. 2022) (reversing denial of preliminary injunction and remanding "for further proceedings consistent with this opinion"); *Otto v. City of Boca Raton*, 981 F.3d 854, 872 (11th Cir. 2020) (reversing district court's denial of preliminary injunction and remanding case for entry of preliminary injunction); *Scott*, 612 F.3d at 1298 (reversing district court and entering preliminary injunction).

## IV.    SUMMARY OF ARGUMENT

ABC asked the district court to preliminarily enjoin the implementation and enforcement of the PLA mandate for federal contracts exceeding $35 million, raising concerns under multiple statutes as well as the First Amendment.  Almost a full year later, the district court addressed only two of ABC's claims on the merits—their claims under the CICA and the FPASA. The district court found ABC was likely to succeed on the merits of their claim under the CICA but found ABC did not meet the burden to show irreparable injury. The district court also concluded ABC's likelihood on the FPASA claim was "rather high" but nevertheless faulted ABC for not "specifically address[ing]" (App. Doc. 1-3, at 8) certain FPASA provisions. The

district court declined to address ABC's remaining claims, the remaining preliminary injunction factors, or ABC's request for injunctive relief limited to ABC's adversely affected membership.

Except for correctly finding ABC to be likely to succeed on the merits of their CICA claim, the district court abused its discretion through the above-referenced findings, non-findings, and conclusions. Contrary to the district court, ABC established a substantial threat of irreparable harm by pointing to injuries arising from systemic barriers to competition and compliance with government mandates. The district court did not meaningfully engage with ABC's arguments and evidence. Instead, the district court faulted ABC for not adequately responding to an unsupported argument about the adequacy of bid protests to remedy ABC members' injuries, even though ABC cited cases in which other courts have found bid protests to be an inadequate remedy. The district court further rejected the harms demonstrated by ABC's subcontractor members as "speculative," even though ABC's subcontractor members provided sworn affidavits outlining undisputed, specific harms.

As noted above, the district court concluded ABC's likelihood of success on the FPASA claim was "rather high" but nevertheless faulted ABC for not "specifically address[ing]" certain general FPAA provisions. (App. Doc. 1-3, at 8). But ABC did address the FPASA provisions at issue and correctly argued these

general provisions failed to justify the President's EO under this Court's holding in *Georgia v. President*, 46 F. 4ᵗʰ 1283, 1291 (11ᵗʰ Cir. 2022). The district court further erred in not reaching ABC's First Amendment claim (as likelihood of success on the First Amendment claim would have automatically allowed ABC to establish irreparable harm), nor addressing the remaining preliminary injunction factors, and not addressing ABC's request for injunctive relief limited to its members.

As a result of the district court's delayed order, the unlawful PLA mandate remains in effect, causing irreparable harm to ABC' members in the form of lost contract opportunities and costly compliance with an unlawful and discriminatory government mandate, as well as continued infringement on ABC's First Amendment rights. Rulings from other courts in recent proceedings serve only to amplify and underscore the harms ABC members continue to suffer and the necessity of injunctive relief.

For all of these reasons, ABC respectfully requests that this Court reverse the district court and either enter a preliminary injunction or remand the case to the district court for immediate entry of a preliminary injunction.

## V.    ARGUMENT AND CITATIONS OF AUTHORITY

### A.    Preliminary Injunction Standard

To obtain a preliminary injunction, the movant must demonstrate: (1) substantial likelihood of success on the merits; (2) substantial threat of irreparable

injury; (3) the threatened injury outweighs any damage the injunctive order might cause the non-moving party; and (4) the order will not be adverse to the public interest. *Georgia v. President*, 46 F.4th 1283, 1291 (11th Cir. 2022); *Sierra Club v. Norton*, 207 F. Supp. 2d 1310, 1317 (S.D. Ala. 2002). ABC met these requirements and the district court abused its discretion in concluding otherwise.

## B. The District Court Abused Its Discretion When It Concluded ABC Did Not Establish a Substantial Threat of Irreparable Harm on Their CICA Claim

The district court properly found ABC "established a likelihood of success on the merits of their CICA claim." (App. Doc. 1-3, at 12). But the district court subsequently erred when it concluded ABC did not establish a substantial threat of irreparable harm.

Congress passed the CICA, 41 U.S.C. § 3301, to require federal agencies awarding contracts to "obtain full and open competition through ... competitive procedures." "[I]mposing more criteria than necessary works against the... oft-repeated priority of achieving 'full and open competition' in the procurement process." *Georgia v. President,* 46 F.4th at 1297.

The district court acknowledged that under 41 U.S.C. § 3301(a), agencies must generally "obtain full and open competition through the use of competitive procedures" and "use the competitive procedures or combination of competitive procedures that is best suited under the circumstances of the procurement." (App.

Doc. 1-3, at 9-10). The district court found persuasive the COFC's recent holding in *MVL*, where the COFC concluded the PLA mandate violated the CICA because it excluded offerors, regardless of their ability to perform the contract, based almost wholly on a policy determination by the President. (App. Doc. 1-3, at 10-12). But after finding ABC members were substantially likely to prevail on their CICA claim, the district court's failure to find irreparable harm was reversible error.

At the outset, the district court conceded that "[ABC] ha[s] provided evidence that compliance with the PLA Rule will expose [their] members to costs and deter them from bidding for covered contracts." (App. Doc. 1-3, at 13). The district court further conceded that "Defendants have not disputed this evidence or argued that such costs and lost opportunities would be insufficient to support an award of injunctive relief in this case." (App. Doc. 1-3, at 13).

Nevertheless, the district court proceeded to reject ABC's showing of irreparable harm solely because ABC did not—in the court's view—adequately respond to an argument raised for the first time in Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction. (Dist. Doc. 25, at 19). There, Defendants-Appellees argued (without support) that the availability of bid protest procedures undermined ABC's otherwise undisputed claims of irreparable harm. (App. Doc. 1-3, at 16; Dist. Doc. 25, at 7, 19).[12]

---

[12] Defendants-Appellees cited *Bldg. & Const. Trades Dep't, AFL-CIO v.*

In its Reply in support of the Motion for Preliminary Injunction, ABC relied primarily—but not exclusively—on the Supreme Court's decision in *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993), where the Supreme Court squarely held that injury arising from systemic barriers to competition is *not* mitigated by the availability of individual bid protest procedures.

The district court distinguished this precedent on the ground that the Supreme Court in *Jacksonville* only addressed standing to sue, not the question of irreparable harm. (App. Doc. 1-3, at 11). But contrary to the district court's opinion, the question here, as in *Jacksonville*, is whether bid protest procedures alone mitigate the harm caused by systemic barriers to competition. In *Jacksonville*, the Supreme Court answered that question in the negative for purposes of standing. *Jacksonville*, 508 U.S. at 666 ("Singly and collectively, these cases stand for the following proposition: When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish

---

*Allbaugh*, 295 F.3d 28 (D.C. Cir. 2002) for the assertion a party could seek redress from a PLA order by filing a bid protest. (Dist. Doc. 25, at 7 n.3). But *Allbaugh* is not a comparable case. There, the court mentioned bid protests only after rejecting a challenge to an executive order. *See Allbaugh*, 295 F.3d at 32-35. But here, the district court did not reject the merits of ABC's CICA claim.

standing....[I]n the context of a set-aside program, the 'injury in fact' is the inability to compete on an equal footing in the bidding process, not the loss of a contract."). There is no reason to apply a different analysis in the context of proving irreparable injury for purposes of preliminary injunctive relief, and the district court articulated no such reason.

In any event, *Jacksonville* was not the "sole" authority relied on by ABC. To the contrary, ABC cited two additional district court decisions, each rejecting the claim that bid protest procedures mitigated irreparable harm for purposes of preliminary injunctive relief: *State v. Nelson*, 576 F. Supp. 3d 1017, 1039 (M.D. Fla. 2021) and *Mark Dunning Indus. v. Perry*, 890 F. Supp. 1504 (M.D. Ala. 1995) (*See* Dist. Doc. 18, at 16, 24). The district court acknowledged these two cases found bid protest remedies to be "inadequate" to compensate for lost contracts in the context of preliminary injunctions. (App. Doc. 1-3, at 16). But inexplicably, the district ignored ABC's citation to these cases and erroneously denied the preliminary injunction solely on that basis as to ABC's contractor members.

The district court's rejection of ABC's irreparable harm is further problematic given that the holdings from *Jacksonville*, *Nelson*, and *Mark Dunning* are not anomalies. Indeed, numerous courts, within this Circuit and outside it, have reached the same or similar conclusions. *See, e.g.*, *Collins & Co., General Contractors, Inc. v. Claytor*, 476 F. Supp. 407, 410 (N.D. Ga. 1979) (monetary damages for lost

contract before the Court of Claims were "inadequate" as those damages "may not include the loss of profits that the plaintiff would have made on this more than two million dollar contract had it been awarded the contract in question"); *Clark Construction Co. v. Pena*, 895 F. Supp. 1483, 1493 (M.D. Ala. 1995) (noting recovery of bid preparation costs was inadequate to compensate an unsuccessful bidder and further noting "the court finds that the right to fair and equal treatment in bidding for government procurement contracts is a statutory right, which can be adequately protected only by the issuance of injunctive relief"); *McKnight v. Constr. Co. v. Perry*, 888 F. Supp. 1178, 1184-85 (S.D. Ga. 1994) (remedy of bid preparation costs "would not adequately compensate [the] [p]laintiff for lost profits to which it should be entitled"); *Nat'l Maritime Union v. Commander, Military Sealift Command*, 824 F.2d 1228, 1237 (D.C. Cir. 1987) ("A disappointed bidder that claims illegality in a procurement alleges an injury beyond its economic loss of the contract. The disappointed bidder may also claim injury to its right to a legally valid procurement process.").

Even if ABC had not adequately explained why bid protests were insufficient to remedy their harm, it should not have mattered. ABC also relied on this Court's finding of irreparable harm under similar circumstances in *Georgia v. President*, 46 F.4th at 1303–07 (time spent complying with a government mandate is an irreparable harm). (Dist. Doc. 18, at 24). Although the district court acknowledged ABC

presented this argument (App. Doc. 1-3, at 3), the court provided no explanation for rejecting the argument. Indeed, regardless of whether ABC took advantage of bid protest options, ABC and their members would have needed to spend time complying with the PLA mandate, and thus, necessarily would have suffered irreparable harm.

The district court further erred in concluding ABC's subcontractor members could not establish irreparable harm—separate from the ABC's prime contractor members—because the subcontractors' affidavits were "speculative and conclusory." (App. Doc. 1-3, at 17). To the contrary, it was not speculative for subcontractor members to raise concerns that general contractors would not select them for projects requiring a PLA mandate and notably, Defendants-Appellees did not dispute the testimony. For example, one subcontractor specifically explained he did not believe any of the prime contractors he knew would select his firm as a subcontractor because the prime contractors he knew had signed agreements with NABTU, whereas his firm entered into a collective bargaining agreement with a union not affiliated with NABTU. (Dist. Doc. 18, Ex. 12 ¶ 2). The district court also ignored additional harms identified by the subcontractors. Indeed, one subcontractor noted it would not be able to accurately estimate its cost calculations because it does not typically use PLAs or work with unions and would incur costs if it needed to obtain apprentices from union apprenticeship programs. (Dist. Doc. 18, Ex. 8 ¶¶ 7,

12). Another subcontractor raised similar concerns about its inability to accurately account for its costs under a PLA. (Dist. Doc. 18, Ex. 10 ¶ 6).

The district court's failure to observe and address the various injuries ABC articulated renders reversal appropriate. *Boulan South Beach Master Ass'n v. Think Props., LLC*, 617 Fed. App'x 931 (11th Cir. 2015) is instructive.[13] There, the district court denied a request for preliminary injunction because, according to the district court, the party did not assert irreparable harm. *Id.* at 933. The Eleventh Circuit vacated the order denying preliminary injunction, noting "there [was] no indication here that the district court analyzed" some of the harms the party seeking injunctive relief articulated. *Id.* at 934. The Eleventh Circuit also observed the district court "made an underlying error of law that distorted its exercise of discretion." *Id.* Here, much like in *Boulan*, *see id.*, the district court made an error of law when it rejected *Jacksonville* as support for ABC's argument that bid protest procedures do not mitigate the harm caused by systemic barriers to competition, (*see* App. Doc. 1-3, at 26). And like in *Boulan*, *see Boulan*, 617 Fed. App'x at 934, where the district court did not analyze some of the harms the party seeking injunctive relief articulated, the

---

[13] *See also United States v. Askins & Miller Orthopaedics, PA*, 924 F.3d 1348 (11th Cir. 2019) (district court erred when it concluded party could not show irreparable harm); *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imps., Inc.*, 756 F.2d 1525 (11th Cir. 1985) (district court erred when it required excessive evidence of irreparable harm).

district court here ignored the harm ABC suffered from complying with a government mandate, as well as harms that ABC's subcontractor members articulated in their sworn affidavits.

Recent court decisions have only exacerbated ABC's irreparable harm, further exposing the erroneous reasoning of the district court. As noted above, in *MVL*, the COFC concluded the PLA requirement violated the CICA. *See MVL*, 174 Fed. Cl. 437, 471 (Fed. Cl. 2025). But subsequently, the COFC denied the plaintiffs' motions for permanent injunction seeking recission of the EO, concluding such relief "exceed[ed] the [COFC]'s authority and must be dismissed accordingly." *See MVL USA, Inc. v. United States*, 2025 U.S. Claims LEXIS 1153, at \*\*4-5, 94, 112 (Fed. Cl. May 6, 2025). Indeed, the COFC specifically noted "plaintiffs [could] pursue their requested relief"—recission of the EO—"in district courts." *See id.* at \*111. In other words, the COFC's ultimate holding in *MVL* underscores the fact that bid protests are *not* an adequate remedy for ABC and relief from a district court (and/or this Court) remains imperative.

The recent injunction from the District Court for the District of Columbia in *NABTU*, also referenced above, further underscores the harm ABC members continue to suffer as a result of the Florida district court's failure to grant injunctive relief. As noted above, and acknowledged by the district court in this case, although the PLA mandate purports to allow exceptions, agencies have not been applying

them, rendering them "functionally meaningless." (App. Doc. 1-3, at 10-12). For a

brief time, DOD and GSA allowed limited exceptions to the PLA mandate. *See*

*NABTU*, Civil Action No. 25-cv-01070-RC, ECF No. 19, at 4. But the District Court

for the District of Columbia enjoined those exceptions, reinstating "the status quo as

defined by a duly Executive Order." *Id.* at 31.

Accordingly, ABC has established a substantial threat of irreparable harm to

ABC's members from the PLA mandate (and ultimately, have suffered irreparable

harm during the pendency of this case). The district court erred finding otherwise.

### C. The District Court Abused Its Discretion When It Concluded ABC Did Not Establish a Substantial Likelihood of Success on the Merits Regarding Their FPASA Claim

The district court further abused its discretion when it found ABC did not

establish they were substantially likely to prevail on their FPASA claim.

The FPASA is designed "to provide the Federal Government with an

economical and efficient system" for procurement activities. *See* 40 U.S.C. § 101;

*Georgia v. President*, 46 F.4th at 1298. "[T]he President's authority should be based

on a 'specific reference' [in] the [FPASA]." *Georgia v. President*, 46 F.4th at 1294,

1297-98, 1301 (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 304 n.34 (1979))

(Plaintiffs likely to succeed on the merits of claim President exceeded authority

under the FPASA where "no statutory provision" contemplated mandate); *see also*

*Florida v. Nelson*, 576 F. Supp. 3d 1017, 1038 (M.D. Fla. 2021) (Plaintiff

"demonstrate[d] a substantial likelihood that [executive order] exceed[ed] the President's authority under FPASA" because "FPASA confers no 'blank check for the President to fill in at his will' and requires power to 'be exercised consistently with the structure and purposes' of FPASA.").

Here, like in *Georgia v. President*, Defendants-Appellees have pointed to no "specific reference" in FPASA allowing the PLA mandate. *Georgia v. President*, 46 F.4th at 1298. Accordingly, the EO, PLA Rule and OMB Memorandum are impermissible *ultra vires* actions by the President.[14] And because the FAR Council[15] and OMB have enforced the PLA mandate, ABC may challenge the EO. *See Chamber of Commerce v. Reich*, 74 F.3d 1322, 1324 (D.C. Cir. 1996) (permitting challenge to executive order based on executive agency's

---

[14] Analysis under the major questions doctrine further reveals the President, FAR Council, and OMB lacked authority to issue the EO, PLA Rule, and OMB Memorandum, as the PLA Rule and EO assert issues of "economic and political significance," and therefore require "clear congressional authorization." *See West Virginia v. EPA*, 142 S. Ct. 2587, 2595 (2022); *see also Alabama Ass'n of Realtors v. HHS*, 141 S. Ct. 2485 (2021); *FDA v. Brown & Williamson*, 529 U.S. 120, 159 (2000); *Georgia v. President*, 46 F.4th at 1295-96 (applying major case doctrine to Presidential actions restricting government contractor rights under the FPASA); *Louisiana v. Biden*, 55 F.4th 1017 (5th Cir. 2022) (same). Major questions appear where, as here, government action impacts contracts and solicitations "across broad procurement categories" in an unprecedented way. *See Georgia v. President*, 46 F.4th at 1295-96.

[15] The FAR Council's rulemaking authority is prescribed within the confines of the OFPP Act and the FPASA, which establish the limited rulemaking power within which the FAR Council must operate. No delegation of authority to issue the presently challenged Rule can be presumed by the agency. *Georgia v. President*, 46 F.4th at 1297-1301.

implementation of a rule enforcing the executive order); *see also ABC SE Tex.*, 2016 WL 8188655, at \*15 (enjoining Executive Order and FAR Council rule unlawfully imposing labor reporting requirements on federal government contractors).

Notably, the district court agreed that ABC's likelihood of success was "rather high" regarding their claims that the PLA mandate violates the FPASA, based upon this Court's holding in *Georgia v. President*, 46 F.4th at 1303–07. But the district court erroneously faulted ABC for failing to "substantively respond to or address" various non-specific statutory provisions that the Defendants-Appellees claimed justified their actions under the FPASA.[16] (App. Doc. 1-3, at 8).

---

[16] The district court explained Defendants-Appellees pointed to the following provisions:

> Defendants argue that the PLA Order falls within the following specific provisions of the relevant subtitle: 41 U.S.C. § 3101(a); 41 U.S.C. § 3703(c); 41 U.S.C. § 3306(a)(1)(A), (a)(2)(B). (Doc. 25 at 16–17). Section 3101(a) states that "[a]n executive agency shall make purchases and contracts for property and services in accordance with this division and implementing regulations of the Administrator of General Services." Section 3703(c) states that "the executive agency shall award a contract with reasonable promptness to the responsible source whose proposal is most advantageous to the Federal Government, considering only cost or price and the other factors included in the solicitation." Finally, § 3306(a)(1)(A) states that "[i]n preparing for the procurement of property or services, an executive agency shall . . . specify its needs and solicit bids or proposals in a manner designed to achieve full and open competition for the procurement"; while § 3306(a)(2)(B) provides that "[e]ach solicitation under this division shall include specifications that . . . include restrictive provisions or conditions only to the extent necessary to satisfy the needs of the executive agency or as authorized by law."

But to the contrary, ABC responded fully to the cited statutory provisions, asserting correctly that the provisions cited contained no specific language authorizing PLA mandates—as required by this Court's holding in *Georgia v. President*. (Dist. Doc. 30, at 2 n.1); (*see also* Dist. Doc. 18, at 15) ("This Circuit has expressly held [a]n executive order cannot rest merely on the policy objectives of [a statute]") (cleaned up). Moreover, the district court itself agreed the cited statutory provisions did not grant "specific authority" supporting the PLA mandate and should therefore have found likelihood of success on this ground. (App. ECF 1-3, at 8).

Accordingly, ABC demonstrated they were substantially likely to prevail on their FPASA claim and the district court erred finding otherwise.

### D. The District Court Abused Its Discretion in Declining to Consider ABC's First Amendment Claim

Next, the district court abused its discretion in failing to address the merits of ABC's First Amendment claim. First Amendment protections apply to government contractors. The government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests" such as "his constitutionally protected ... associations," and the government may not restrict First Amendment rights as "the price of maintaining eligibility to perform government contracts." *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972); *ABC*, 2016 WL 8188655, at *8;

---

(App. Doc. 1-3, at 7).

*White v. Sch. Bd. of Hillsborough County*, 2009 U.S. App. LEXIS 1532, at *7 (11th Cir. Jan. 27, 2009); *Martin v. Wrigley*, 540 F. Supp. 3d 1220, 1229 (N.D. Ga. 2021); *see also Road-Con, Inc. v. City of Philadelphia*, 120 F.4th 346 (3d Cir. 2024) (allowing contractors' First Amendment claim, which challenged project labor agreements used for two Philadelphia projects, to proceed).

As specifically addressed in the *Road-Con* case, union association is a type of protected expressive association under the First Amendment, citing *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2463-66 (2018). "Just as '[t]he First Amendment clearly guarantees the right to join a union...it presupposes a freedom not to associate' with a union." *See Mulhall*, 618 F.3d at 1287. "[M]andatory associations are permissible only when they serve a 'compelling state interes[t]...that cannot be achieved through means significantly less restrictive of associational freedoms.'" *See Knox v. SEIU, Local 1000*, 567 U.S. 298, 310 (2012).

Here, the challenged PLA mandate infringes on ABC's freedom of association by requiring ABC's members to associate with unions to bid on and/or perform contracts that the PLA Rule covers. (*See also* Dist. Doc. 18, Ex. 4 ¶ 8, Ex. 6 ¶ 10, Ex. 7 ¶¶ 6-7, Ex. 8 ¶ 9, Ex. 9 ¶ 8). [17]

---

[17] In addition, the PLA Rule requires ABC's members to compel their employees to associate with unions as a condition of award of construction work, forcing them to aid and abet the infringement of employee rights under the Constitution.

But the PLA Rule does not serve the government's claimed interest in increased efficiency. The results of the federal government's pro-PLA policy from fiscal year 2009 to fiscal year 2023, encouraging—but not requiring—federal agencies to mandate PLAs, conclusively shows no factual basis for the PLA Rule. Between fiscal years 2009 and 2024, just 12 federal contracts valued at $1.26 billion contained a PLA mandated by a federal agency out of 3,222 contracts of $25 million or more valued at a total of $238 billion. (Dist. Doc. 18, Ex. 14 ¶ 15). This means procurement officials saw no need to impose PLAs to increase economy or efficiency on more than 99% of federal construction contracts of $25 million or more. (*See* Dist. Doc. 18, Ex. 14, ¶ 15; Ex. 1, at 18).

Defendants-Appellees have not shown the previous approach of encouraging PLAs, but not requiring them, was insufficient to meet any compelling government interest "that cannot be achieved through means significantly less restrictive of associational freedoms.'" *See Knox*, 567 U.S. at 310.

Nevertheless, the district court declined to consider ABC's claims beyond the CICA claim because it found ABC was likely to succeed on that claim. (App. Doc. 1-3, at 13). But because the district court rejected ABC's showing of irreparable harm for the CICA claim, the district court should, at minimum, have addressed the First Amendment claim. Regardless of whether ABC established irreparable harm for purposes of their CICA claim – which they did – ABC should have prevailed

based on their First Amendment claim because constitutional violations are *inherently* irreparable. *See Otto*, 981 F.3d at 870 (because party showed likelihood of success on the merits of its First Amendment claim, the party also showed irreparable injury, as the unconstitutional penalization of speech constituted "a per se irreparable injury"); *see also Scott*, 612 F.3d at 1295 (describing First Amendment injury as "obviously irreparable" and explaining injuries are irreparable where they "cannot be undone through monetary remedies"); *LaCroix*, 38 F.4th at 954-55 (government actions "that violate the First Amendment are 'per se irreparable injur[ies]'").

ABC established they are likely to prevail on their First Amendment claim, and the district court abused its discretion in declining to consider ABC's First Amendment claim. If this Court declines to enter injunctive relief in response to ABC's claims under the CICA or the FPASA, ABC requests that the Court consider its First Amendment claim and enter injunctive relief on this basis. *See LaCroix*, 38 F.4th at 954 (appellate court may reach issue district court did not reach if the outcome of the legal question is clear).

### E. The District Court Abused Its Discretion in Failing to Address ABC's Remaining Arguments for Why the PLA Mandate Is Unlawful

While it is unnecessary for this Court to reach ABC's remaining legal theories – not addressed by the district court – in order to reverse the district court's denial

of the preliminary injunction; ABC has by no means waived its additional claims. Thus, the district court further erred in failing to address the merits of ABC's claims under the OFPP, the APA and NLRA. In violation of the OFPP and APA, Defendants-Appellees failed to provide an adequate explanation for the PLA mandate. (Dist. Doc. 18, Ex. 1, at 21-24). Defendants-Appellees further failed to meaningfully consider the many problems associated with PLAs, ignoring, for example, overwhelming evidence that government-mandated PLAs discourage competition and increase costs. (*E.g.*, Dist. Doc. 18, Ex. 1 at 7, 12, 15-16, 25).

Also in violation of the APA, the PLA mandate violates the Small Business Act by drastically reducing the involvement of small businesses in federal contracts. (Dist. Doc. 18, Ex. 11, SBA Comments, at 2-3). The PLA mandate also violates the Regulatory Flexibility Act ("RFA"), which requires agencies issuing rules under the APA publish a final regulatory flexibility analysis assessing the negative impact of a rule on small businesses. *Southern Offshore Fishing Ass'n v. Daley*, 995 F. Supp. 1411, 1436-37 (M.D. Fla. 1998), and 55 F. Supp. 2d 1336 (M.D. Fla. 1999) (enjoining portion of regulations that did not comply with RFA). Here, that analysis was inadequate, as Defendants-Appellees improperly dismissed numerous alternatives to the PLA Rule advanced in comments, including ABC's comments, with minimal analysis. 88 Fed. Reg. 88716-88717; *see also Southern Offshore*, 55 F. Supp. 2d at 1340 (RFA analysis of a few pages inadequate). Defendants-

Appellees also violated the OFPP and APA by promulgating the OMB Memorandum without notice and opportunity for public comment. *See Louisiana v. Biden*, 575 F. Supp. 3d 680, 694 (W.D. La. 2021) (OMB violated the APA when it issued binding guidance without following OFPP notice and comment requirements).

Finally, Section 8(d) of the NLRA prohibits the government from requiring employers to enter into a labor agreement or any specific term of such an agreement. *See H.K. Porter v. NLRB*, 397 U.S. 99, 102-109 (1970) (holding that the federal government's National Labor Relations Board does not have the power to compel employers to agree to any substantive contractual provision of a collective bargaining agreement). The PLA mandate, however, requires such compelled agreements, thereby violating the NLRA.[18]

Although the CICA, FPASA, and First Amendment claims discussed above provide ample basis alone for this Court to reverse the district court, the district court should nevertheless have considered ABC's arguments under the OFPP, APA and NLRA as well. The strength of ABC's likelihood of success—when considering *all* of its arguments—should have influenced the district court's calculus before it denied ABC's ability to show irreparable harm. *See Xianfeng Wang v. P'ships*, 2024

---

[18] Section 8(d) was expressly not addressed by the Supreme Court in the "Boston Harbor" decision on which Defendants relied below. *Bldg & Const. Trades Council v. Associated Builders and Contractors*, 507 U.S. 218, 232, n.2 (1993).

U.S. Dist. LEXIS 111767, at *4 (M.D. Fla. Jun. 25, 2024). The district court therefore erred in failing to consider ABC's OFPP, APA and NLRA claims, which provided further evidence that ABC satisfied its burden for obtaining injunctive relief.

> **F.      The District Court Abused Its Discretion in Failing to Address the Remaining "Public Interest" Factors, Which Further Compel Preliminary Injunctive Relief**

The district court erred in failing to consider the third and fourth preliminary injunction factors: the harms that would result without an injunction and the nature and extent of the public interest impact.

When a plaintiff shows a likelihood of success on the merits and irreparable harm absent injunctive relief, the balancing of potential harms favors the plaintiff when "[a]n injunction poses little injury" to a defendant. *See Florida*, 576 F. Supp. 3d at 1040. Here, as discussed above, ABC have shown a likelihood of success on the merits and that they will suffer irreparable harm absent injunctive relief. Any injury Defendants-Appellees suffer does not tip the balance to them. Even the government's interest in combating COVID-19 did not justify unlawful agency action. *See Georgia v. President*, 46 F.4th at 1303. And if the Court grants injunctive relief here, Defendants-Appellees "retain the right to recommend [PLAs] among contractors and to seek contractual remedy for delay or failure to perform a contract." *See Florida*, 576 F. Supp. 3d at 1040. Accordingly, the balance of

potential harms weighs toward injunctive relief.

The public interest favors "maintaining the integrity of the procurement process and ensuring fair and open competition," *see Mark Dunning Indus. v. Perry*, 890 F. Supp. 1504, 1518 (S.D. Ala. 1995), and supports protecting parties from "likely-unlawful government action." *See Florida*, 576 F. Supp. 3d at 1040; *see also Georgia v. President*, 46 F.4th at 1303. Defendants-Appellees' actions here are unlawful and inconsistent with open competition; accordingly, an injunction serves the public's interest.

After the district court erroneously found insufficient irreparable harm to issue the preliminary injunction, the court ended its opinion without addressing the remaining required factors in evaluating the merits of injunctive relief. (App. Doc. 1-3, at 18). Instead, the district court should have found sufficient irreparable harm and considered whether the balance of potential harms favors the plaintiff absent the injunction, and whether the injunction would be adverse to the public interest. *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). The district court committed further error by failing to make such findings.

If this Court agrees ABC has established likelihood of success on the merits and a sufficient showing of irreparable harm, this Court may address the public interest factors without remanding for further analysis from the district court where "the resolution of the remaining [preliminary injunction] factors is...clear cut." *See*

*LaCroix*, 38 F.4th at 955. For the reasons noted above, resolution of the remaining factors is "clear cut" in this case. *See id.*

Accordingly, ABC has satisfied the third and fourth requirements for injunctive relief. If this Court concludes ABC has established a substantial likelihood of success and irreparable harm on at least one of their claims, ABC respectfully requests the Court conclude ABC has satisfied the remaining preliminary injunction requirements.

### G. The District Court Abused Its Discretion in Failing to Order Injunctive Relief From the PLA Mandate to ABC's Members

The district court devoted a lengthy footnote in its opinion to expressing opposition to issuance of a nationwide injunction in this case. (App. Doc. 1-3, at 5, n.2). Contrary to the district court, ABC represents qualified contractors and subcontractors all over the country – not just in the South - who are being discriminated against by the unlawful PLA mandate, and therefore nationwide relief is called for. The district court also failed to address ABC's alternative request for injunctive relief limited to ABC's members seeking to perform work on projects covered by the unlawful EO and FAR Rule. (Dist. Doc. 18, at 25). The remedy ABC requested is the same remedy this Court granted to Appellant ABC in *Georgia v. President,* 46 F.4th at 1308 ("The injunction permissibly blocks federal agencies from enforcing the mandate in contracts with any … member of Associated Builders and Contractors"). Such relief can and should be awarded to the ABC's members on

an expedited basis for the same reasons as in *Georgia v. President.*

## VI.    CONCLUSION

For the forgoing reasons, the district court abused its discretion in denying ABC's Motion for Preliminary Injunction. ABC respectfully requests this Court enter its requested preliminary injunction or remand this matter to the district court with instructions to enter a preliminary injunction.

Dated:  May 27, 2025

*/s/ Maurice Baskin*
Maurice Baskin
LITTLER MENDELSON, P.C.
815 Connecticut Ave., N.W.
Ste. 400
Washington, D.C. 20006
(202) 772-2526
(202) 842-0011 (Fax)
mbaskin@littler.com

Kimberly J. Doud
LITTLER MENDELSON, P.C.
111 N Orange Ave.,
Suite 1750
Orlando, FL 32801
407-393-2951
407-641-9263 (Fax)
kdoud@littler.com

*ATTORNEYS FOR PLAINTIFFS-*
*APPELLANTS ABC*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8,651 words, excluding the parts of the brief exempted by Federal Rules of Appellate Procedure 32(f) and Local Rule 32-4.

This brief complies with the typeface requirements of Federal Rules of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Times New Roman font, with double-spaced text and 1-inch margins on all sides.

*/s/ Maurice Baskin*
Maurice Baskin

**CERTIFICATE OF SERVICE**

I hereby certify that on May 27, 2025, the foregoing was filed with the Clerk of the United States Court of Appeals for the Eleventh Circuit electronically using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Maurice Baskin*
Maurice Baskin