**Case No. 25-11375-G**

---

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

ASSOCIATED BUILDERS AND CONTRACTORS FLORIDA FIRST COAST
CHAPTER, AND ASSOCIATED BUILDERS AND CONTRACTORS,

Plaintiffs-Appellants,

v.

GENERAL SERVICES ADMINISTRATION, ET AL.,

Defendants-Appellees.

---

On Appeal from the United States District Court
for the Middle District of Florida
The Honorable Wendy Berger, Presiding
**3:24-cv-318-WWB-MCR**

---

**PLAINTIFFS-APPELLANTS' PETITION FOR REHEARING *EN BANC***

---

Kimberly Doud
Littler Mendelson, P.C.
111 N Orange Ave., Ste. 1750
Orlando, FL 32801
Telephone:  407-393-2951
Facsimile: 407-641-9263
kdoud@littler.com

Maurice Baskin
Littler Mendelson, P.C.
815 Connecticut Ave NW, Ste. 400
Washington, DC 20006
Telephone: 202.772.2526
Facsimile:   202.814.0011
mbaskin@littler.com

*Attorneys for Plaintiffs-Appellants*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Plaintiffs-Appellants ASSOCIATED BUILDERS AND CONTRACTORS, and ASSOCIATED BUILDERS AND CONTRACTORS FIRST FLORIDA CHAPTER (hereafter collectively "ABC" or "Appellants"), submit the following list of the trial judge, all attorneys, persons, associations of persons, firms, partnerships, and corporations with any known interest in the outcome of this appeal, including subsidiaries, conglomerates, affiliates and parent corporations, any publicly held company that owns 10% or more of the party's stock, and other identifiable legal entities related to a party. None of the companies identified below are publicly traded, nor are they owned by any publicly traded company.

1.      American-Electrical Contracting, Inc., *Affiant for Appellants-Plaintiffs*;

2.      Associated Builders and Contractors, *Appellant-Plaintiff*;

3.      Associated Builders and Contractors First Florida Chapter, *Appellant-Plaintiff*;

4.      Baskin, Maurice, *Counsel for Appellants-Plaintiffs*;

5.      Bennett, Michael, *Affiant for Appellants-Plaintiffs*;

6.      Berger, Hon. Wendy, *United States District Judge*;

7.      Blum, Matthew C., former FAR Council Chair, Acting Administrator, Office of Federal Procurement Policy, Office of Management and Budget, in his

official capacity, *Appellee-Defendant*;

8.     Brasfield & Gorrie, LLC, *Affiant for Appellants-Plaintiffs*;

9.     Brubeck, Ben, *Affiant for Appellants-Plaintiffs*;

10.    Cianbro Companies, the, *Affiant for Appellants-Plaintiffs*;

11.    Clark, William F., Director, Office of Government-Wide Acquisition Policy, Office of Acquisition Policy, Office of Government-Wide Policy, General Services Administration, in his official capacity, *Appellee-Defendant*;

12.    Doud, Kimberly, *Counsel for Appellants-Plaintiffs*;

13.    Environmental Chemical Corporation, *Affiant for Appellants-Plaintiffs*;

14.    Farby, Lesley, *Counsel for Appellees-Defendants*;

15.    Ferguson, Matthew, *Affiant for Appellants-Plaintiffs*;

16.    General Services Administration, *Appellee-Defendant*;

17.    Gerardi, Michael, *Former Counsel for Appellees-Defendants*;

18.    Goodnature, Taisa, *Former Counsel for Appellees-Defendants*;

19.    Harada, Christine J., former FAR Council Chair, Senior Advisor to the Deputy Director for Management, Office of Federal Procurement Policy, Office of Management and Budget, in her official capacity, *Appellees-Defendants*;

20.    Haskell Company, the, *Affiant for Appellants-Plaintiffs*;

21.    Hensel Phelps Construction Co., *Affiant for Appellants-Plaintiffs*;

22.    Hoffman, Karin Tucker, *Affiant for Appellants-Plaintiffs*;

iii

23.    Interstate Sealant & Concrete, Inc., *Affiant for Appellants-Plaintiffs*;

24.    Jackson, Karla S., former Assistant Administrator for Procurement, National Aeronautics and Space Administration, in her official capacity, *Appellees-Defendants*;

25.    JCM Associates, Inc., *Affiant for Appellants-Plaintiffs*;

26.    Kehoe, Gregory W., *Counsel for Appellees-Defendants*;

27.    Koses, Jeffrey A., Senior Procurement Executive, General Services Administration in his official capacity, *Appellee-Defendant*;

28.    Laurie, James P., *Affiant for Appellants-Plaintiffs*;

29.    Littler Mendelson, P.C., *Counsel for Appellants-Plaintiffs*;

30.    M.C. Dean, Inc., *Affiant for Appellants-Plaintiffs*;

31.    McReady III, James C., *Affiant for Appellants-Plaintiffs*;

32.    Messenger, William, *Counsel for Amicus Curiae*;

33.    Murray, Brian, *Affiant for Appellants-Plaintiffs*;

34.    National Right to Work Legal Defense Foundation, *Amicus Curiae*;

35.    Niese, Bradley, Senior Procurement Executive/Deputy CAO, National Aeronautics and Space Administration in his official capacity, *Appellee-Defendant*;

36.    Pattee, James, *Affiant for Appellants-Plaintiffs*;

37.    Rhodes, Kevin, FAR Council Chair, Administrator, Office of Federal Procurement Policy, *Appellee-Defendant*;

iv

38.    Richardson, Monte C., *Magistrate Judge*;

39.    Roth, Yaakov M., *Counsel for Appellees-Defendants*;

40.    Scarborough, Charles W., *Counsel for Appellees-Defendants*;

41.    Shumate, Brett A., *Counsel for Appellees-Defendants*;

42.    Sment, Cheryl, *Affiant for Appellants/Plaintiffs*;

43.    Starnes, Justin, *Affiant for Appellants-Plaintiffs*;

44.    Tenaglia, John M., Principal Director, Defense Pricing and Contracting, U.S. Department of Defense, *Appellee-Defendant*;

45.    Vought, Russell, current Director of Office of Management and Budget, in his official capacity, *Appellee-Defendant*;

46.    Winik, Daniel, Counsel for *Appellees-Defendants*;

47.    Yencarelli, Dave, *Affiant for Appellants-Plaintiffs*;

48.    Young, Shalanda, former Director of Office of Management and Budget, *Appellee-Defendant*;

Pursuant to Eleventh Circuit Rule 26.1-1, 26.1-2 and 26.1-3, counsel of record for ABC hereby state as follows:

- Publicly traded company or corporation that has an interest in the outcome of the case or appeal: None.

- Parent Corporations: None.

- Publicly Held Companies Owning Ten Percent (10%) or More of Stock: None.

v

## **RULE 40 CERTIFICATION**

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decisions of the Supreme Court of the United States and the precedents of this Circuit; and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court: *Georgia v. President*, 46 F.4th 1283 (11th Cir. 2022); *Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231 (11th Cir. 2022); *Mulhall v. Unite Local 355*, 618 F.3d 1279 (11th Cir. 2010); *United Sates v. Frandsen*, 212 F.3d 1231 (11th Cir. 2000); *Janus v. AFSCME, Council 31*, 585 U.S. 878 (2018); *O'Hare Truck Serv. v. City of Northlake*, 541 U.S. 267 (2004); *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442 (2008); *Road-Con v. Philadelphia*, 120 F.4th 346 (3d Cir. 2024).

I express a belief, based on a reasoned and studied professional judgment, that this appeal involves one or more questions of exceptional importance: specifically whether the unprecedented Executive Order mandating project labor agreements (PLAs) on large federal construction projects violates the Competition in Contracting Act (CICA) and/or the Federal Property and Administrative Services Act (FPASA), the First Amendment rights of ABC's member contractors, the Administrative Procedure Act, and the National Labor Relations Act. All rights reserved as to other issues on appeal.      */s/ Maurice Baskin*

Attorney Of Record For Plaintiffs-Appellants June 4, 2026

# **TABLE OF CONTENTS**

Page

I. STATEMENT OF THE ISSUE ASSERTED AS REQUIRING *EN BANC* CONSIDERATION..................................................................1

II. STATEMENT OF THE COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE ....................................................1

III. STATEMENT OF ANY FACTS NECESSARY TO ARGUMENT OF THE ISSUES ......................................................................3

IV. ARGUMENT AND AUTHORITIES SUPPORTING REHEARING *EN BANC.* ...............................................................................5

    A. The Panel Improperly Applied This Court's Precedents in Rejecting ABC's CICA and/or FPASA Claims, Calling for Rehearing *en banc* to Establish the Proper Standard. ..........................5

    B. The Panel Erred in Rejecting ABC's First Amendment Claim, Again Requiring Rehearing *en banc*....................................11

V. CONCLUSION....................................................................16

CERTIFICATE OF COMPLIANCE....................................................18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AFSCME Council 79 v. Scott*,
   717 F.3d 851 (11th Cir. 2013) ...........................................................7

*Texas v. Biden*,
   694 F. Supp. 3d 851 (S.D. TX 2023)...................................................9

*Bldg. & Constr. Trades Council v. Associated Builders & Contrs.*,
   507 U.S. 218 (1993)...........................................................................16

*Bondi v. Vanderstok*,
   604 U.S. 458 (2025)..............................................................................6

*Boy Scouts of America v. Dale*,
   530 U.S. 640 (2000)......................................................................14, 15

*Club Madonna Inc. v. City of Miami Beach*,
   42 F.4th 1231 (11th Cir. 2022) ...........................................................6

*H.K. Porter Co. v. NLRB*,
   397 U.S. 99 (1970).............................................................................16

*Harris v. Mexican Specialty Foods, Inc.*,
   546 F.3d 1301 (11th Cir. 2009) ...........................................................8

*Janus v. AFSCME, Council 31*,
   585 U.S. 878 (2018)...........................................................................14

*Moody v. NetChoice, LLC*,
   603 U.S. 707 (2024)...........................................................................11

*Mulhall v. Unite Local 355*,
   618 F.3d 1279 (11th Cir. 2010) .........................................................13

*MVL USA, Inc. v. United States*,
   174 Fed. Cl. 437 (Fed. Cl. 2025) .........................................................2

*MVL USA, Inc. v. United States (II)*,
   176 Fed. Cl. 582 (Fed. Cl. 2025) .........................................................4

*NASA v. Nelson*,
  562 U.S. 134 (2011).................................................................................10, 15

*O'Hare Truck Service, Inc. v. City of Northlake*,
  518 U.S. 712 (1996).................................................................................14, 15

*Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*,
  715 F.3d 1268 (11th Cir. 2013 ) ...................................................................3

*Georgia v. President of the U.S.*,
  46 F.4th 1283 (11th Cir. 2022) ...........................................................8, 9, 10

*Redner v. Dean*,
  29 F. 3d 1495 (11th Cir. 1994) ......................................................................9

*United States v. Rider*,
  2025 U.S. App. LEXIS 14812 (11th Cir. Jun. 16, 2025) ...............................6

*Road-Con Construction, Inc. v Philadelphia*,
  120 F.4th 346 (3d Cir. 2024) ..................................................................12, 14

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
  547 U.S. 47 (2006).......................................................................................15

*United States v. Salerno*,
  481 U.S. 739 (1987).................................................................................5, 6, 7

*SisterSong Women of Color Reprod. Just. Collective v. Governor of
  Ga.*,
  40 F.4th 1320 (11th Cir. 2022) ......................................................................5

*United States v. Stevens*,
  559 U.S. 460 (2010).......................................................................................13

*Nebraska v. Su*,
  121 F.4th 1 (9th Cir. 2024).....................................................................9, 10, 11

*Texas v. Trump*,
  127 F.4th 606 (5th Cir. 2022).........................................................................9

*United Sates v. Frandsen*,
  212 F.3d 1231 (11th Cir. 2000) ......................................................................5

**Statutes**

National Labor Relations Act ...............................................................16

**Other Authorities**

87 Fed. Reg. 7363 ........................................................................1, 4

First Amendment................................................... 1, 2, 11, 13, 14, 15, 16

OMB Memorandum M-24-06...................................................................4

## I.    STATEMENT OF THE ISSUE ASSERTED AS REQUIRING *EN BANC* CONSIDERATION

Whether the Panel Opinion departed from holdings of the Supreme Court, this Court and other circuit courts, in denying a preliminary injunction to prevent irreparable harm to ABC's member contractors resulting from an Executive Order mandating union-only PLAs on large federal construction projects. Absent rehearing *en banc*, the Executive Order will continue to cause irreparable harm by undermining the statutory competitive bidding process and will continue to discriminate against non-union contractors in violation of their First Amendment right not to be compelled to associate with labor unions, among other law violations.

## II.    STATEMENT OF THE COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE

On February 4, 2022, for the first time in U.S. history, President Biden issued an Executive Order (EO 14063), mandating that contracts for large government construction projects be restricted to those contractors and subcontractors who were willing to become parties to a Project Labor Agreement (PLA) with one or more labor unions.  After the order was implemented by the FAR Council in January, 2024, Plaintiff-Appellants ABC filed suit in the Middle District of Florida, seeking a judicial declaration that the EO unlawfully discriminated against ABC's members who have expressed their desire to perform work on the basis of merit and open competition, without being bound by a PLA to associate with unions. (Dist. Dkt. 1).

1

Subsequently, ABC filed a Motion for Preliminary Injunction with attached affidavits, establishing ABC's likelihood of success on the merits of their claims that the PLA mandate violates their rights under CICA, FPASA, the First Amendment, and other laws. (Dist. Dkt. 18). ABC also established irreparable harm and explained why the PLA mandate is contrary to the public interest. (*Id.*).

While ABC's Motion was pending, on January 21, 2025, the Court of Federal Claims (COFC) ruled on consolidated bid protests challenging multiple projects on which the PLA mandate had been imposed. The COFC found the PLA mandate imposed by the EO on the protested projects violated CICA because the bid process excluded offerors regardless of their ability to perform the contract, even when market research demonstrated that the inclusion of a PLA requirement in the solicitation reduced competition, economy, and efficiency. *See MVL USA, Inc. v. United States*, 174 Fed. Cl. 437, 441, 453-54 (Fed. Cl. 2025).

On March 28, 2025, the district court issued its ruling on ABC's Motion for Preliminary Injunction. (Dist. Ct. Op.; App. Dkt. 1-3). The district court found it "highly likely" that ABC will succeed on the merits of the claim that the PLA mandate violates CICA. (*Id.* at 10-12) ("Simply put, the evidence before the Court is that Defendants' course of dealing has rendered the exceptions to the PLA Rule 'functionally meaningless.'"). The district court nevertheless denied ABC's request for preliminary injunctive relief on the erroneous ground that ABC's motion failed

2

to demonstrate irreparable harm to ABC's construction members. (*Id*. at 16-17).

ABC appealed the denial of preliminary injunctive relief to this Court. The Panel agreed with ABC that the district court erred in its assessment of irreparable harm. The Panel specifically held that the district court should not have rejected ABC's concerns about "lost contract opportunities" or "systemic barriers to competition", because the monetary relief available at the COFC would not protect the associations' members from the harms they identified. (Op. 9-11, citing *inter alia Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1288-89 (11th Cir. 2013)). Nevertheless, the Panel rejected ABC's request for a preliminary injunction on the erroneous ground that ABC was not likely to succeed on the merits of its challenge to the PLA mandate, contrary to the findings of the district court. (*Id.* at 12-24). As further explained below, the Panel's improper findings on the merits deviated from precedents of the Supreme Court, this Circuit and other circuits, calling for corrective action in the form of rehearing *en banc*.

## III.  STATEMENT OF ANY FACTS NECESSARY TO ARGUMENT OF THE ISSUES

ABC represents many construction contractors who regularly perform high quality government construction projects – large and small – based on the principles embedded in CICA, *i.e.*, that all government construction contracts should be awarded on the basis of fair and open competition.  (Dist. Dkt. 18, Ex. 14 Brubeck Aff. ¶ 1). The record is undisputed that the overwhelming majority of federal

construction projects prior to 2024 were awarded and performed economically and efficiently by contractors whose workers are not unionized. (Opening Br. 4). It is also undisputed that the PLA mandate has caused adverse impacts on competition for government construction projects and has resulted in increased costs and reduced efficiency. See OMB Memorandum M-24-06, in which the agency acknowledged PLAs often "require contractors to use the union's hiring hall for referrals" and create "unintended barriers to entry." (Dist. Dkt. 18, Ex. 3).

As implemented by the FAR Council, the EO allows a "senior agency procurement official" to find that a PLA would not advance the government's interest in economy and efficiency; or that a PLA would "substantially reduce" bidders "as to frustrate full and open competition"; or that the PLA mandate would otherwise be inconsistent with applicable law. 87 Fed. Reg. 7363 § 5. But as the district court found based on the undisputed record, every solicitation for bids on covered government construction contracts has required a bid protest and/or an order of the COFC due to the soliciting agency's failure to apply any exemption. The COFC has determined that it lacks jurisdiction to issue a broader injunction to prevent further discrimination in contract awards; hence the continuing need for the injunction requested in the district court by ABC. *MVL USA, Inc. v. United States (II)*, 176 Fed. Cl. 582, 619-20 (Fed. Cl. 2025).

**IV.    ARGUMENT AND AUTHORITIES SUPPORTING REHEARING *EN BANC*.**

   **A.    The Panel Improperly Applied This Court's Precedents in Rejecting ABC's CICA and/or FPASA Claims, Calling for Rehearing *en banc* to Establish the Proper Standard.**

As noted above, the district court held that ABC was "highly likely" to succeed on the merits of showing that the PLA Mandate violates CICA due to its plain adverse impact on competition. (Dist. Ct. Op. 10-12). On appeal, the Panel overturned the district court's finding. (Op. 13-15). In doing so, the Panel relied on the Supreme Court's "no set of circumstances" test, set forth in the much criticized and inapposite Supreme Court decision in *United States v. Salerno*, 481 U.S. 739, 751-52 (1987).[1]

This Circuit has recognized that *Salerno* "has been subject to a heated debate in the Supreme Court, where it has not been consistently followed." *United Sates v. Frandsen*, 212 F.3d 1231, 1235 n.3 (11th Cir. 2000). The "no set of circumstances" test arose from a constitutional challenge to a statute, not present here. *Salerno*, 481 U.S. at 745. The Supreme Court has applied *Salerno* to regulatory challenges only twice in the last 40 years, and "neither decision explained why the *Salerno* rule should be extended in that way." *See Bondi v. Vanderstok*, 604 U.S. 458, 496 n.5,

---

[1] The case cited by the Panel in which *Salerno* is quoted is a "void for vagueness" abortion rights decision bearing no similarity to the present appeal. *SisterSong Women of Color Reprod. Just. Collective v. Governor of Ga.*, 40 F.4th 1320, 1328 (11th Cir. 2022).

515 (2025) (Thomas, J., dissenting; Alito, J., dissenting).

Both the Supreme Court and numerous courts in this Circuit have held that the "no set of circumstances" test was not intended to create a constitutional hurdle that is impossible to meet in a facial challenge. As the Supreme Court and this Circuit's decisions have explained, the distinction between facial and as-applied challenges "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *See United States v. Rider*, 2025 U.S. App. LEXIS 14812, at *2 n.2 (11th Cir. Jun. 16, 2025) (citing *Citizens United v. FEC*, 558 U.S. 310, 330 (2010)).

In *Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231 (11th Cir. 2022), this Circuit rejected the idea that *Salerno* required the plaintiff to "prove that there is no hypothetical situation in which the [o]rdinance could be validly applied." *Id.* at 1256. Instead, this Circuit explained: "*Salerno* is correctly understood not as a separate test applicable to facial challenges, but a description of the outcome of a facial challenge in which a statute fails to satisfy the appropriate constitutional framework." *Id.* (quoting *Doe v. City of Albuquerque*, 667 F.3d 1111 (10th Cir. 2012)). Accordingly, the Panel's approach here—applying *Salerno* to require ABC to prove the PLA mandate could *never* be validly enforced—runs contrary to precedent from the Supreme Court and this Circuit and therefore calls for rehearing *en banc*.

6

Even if the *Salerno* test could be said to apply to the PLA mandate at issue here, the Panel erred in relying on the three exemptions to the mandate as the main reason why the "no set of circumstances" standard cannot be met in this case. (Op. 14-15). To the contrary, as the district court found, the undisputed record shows that no federal agency has adopted *any* of the supposed exceptions to the PLA mandate in the absence of a bid protest and/or court order; in other words the so-called exceptions on which the Panel relied have been ignored by the government *in every set of circumstances*. The Panel was therefore wrong to "assume[ ] agencies take the … exceptions [to the PLA mandate] seriously". (Op. 14). It is instead undeniable that the PLA mandate violates CICA by imposing unlawful criteria on the bidding process that inherently infringe on the CICA principles of full and open competition.

The Panel further erred by asserting that the undisputed record evidence refuting the "functionally meaningless" exceptions can only be considered in an "as applied" challenge. (Op. 14-15). Contrary to the Panel's rigid analysis, this Circuit has recognized the line between facial and as-applied challenges is "fluid." *E.g.*, *AFSCME Council 79 v. Scott*, 717 F.3d 851, 865 (11th Cir. 2013). Further, the undisputed evidence that the PLA mandate's exceptions have never been used serves as proof that the exceptions on their face are insufficient to prevent the PLA Mandate from violating the open competition requirements of CICA under any set of

7

circumstances.[2]

To the same effect is the Eleventh Circuit case of *Georgia v. President of the U.S.*, 46 F.4th Cir. at 1294. The majority opinion by Judge Grant, with Judge Edmondson concurring in the judgment, held that the President's actions must be "consistent with the policies and directives that Congress included in [CICA]," which "include the rule that agencies must obtain full and open competition through most procurement procedures." (*Id.*). As the *Georgia* court further held: "Imposing more criteria than necessary works against the Federal Property Act's oft-repeated priority of achieving full and open competition in the procurement process." *Id.* at 1297.

The Panel here concluded *Georgia* was not binding Circuit precedent because Judge Grant's opinion in the case was not the "narrowest ground[] of concurrence" and that instead, Judge Edmondson's limited concurrence was the "narrowest." (Op. 16-17). But the sole issue on the merits before the appeals court in *Georgia* – was whether the FPASA and CICA authorized the President to disqualify an entire class of contractors based on a non-statutory socioeconomic set-aside; the issue presented again here. In other words, Judge Edmondson's concurrence finding for the plaintiffs

---

[2] This case is different from *Harris v. Mexican Specialty Foods, Inc.*, 546 F.3d 1301 (11th Cir. 2009), which the Panel cited. There, the court concluded a law's statutory damages provision was not unconstitutionally excessive because a case could exist where a party asserted a harm comparable to the law's statutory damages.

necessarily adopted Judge Grant's basic reasoning. Judges Edmondson and Grant also joined to affirm the district court's injunction to that same effect, further reflecting agreement that FPASA and CICA do not authorize unbounded presidential discretion to infringe competition. *See Georgia v. President*, 46 F.4th at 1308.

In choosing to disregard the precedential value of Judge Grant's opinion in *Georgia*, the Panel misapplied this Court's holding in *Redner v. Dean*, 29 F. 3d 1495, 1500 (11th Cir. 1994). In that case, there were multiple opinions by Supreme Court justices resulting only in a plurality, *i.e.*, no majority outcome. But in the *Georgia* case, a 2-1 majority voted that the plaintiffs were likely to succeed on the merits of their claims under the FPASA and CICA, and therefore affirmed the district court's injunction, a holding directly contrary to the Panel opinion in the present appeal.[3]

Even if the Panel here was correct in finding *Georgia* not to be binding precedent, the Panel's analysis compounds an existing circuit split. The Panel concluded sections 3306 and 3703 of title 41 and section 121(a) of title 40 somehow authorized the PLA mandate without saying so. (Op. 17-19). But as the Ninth Circuit recently explained, a president may only use section 121 of FPASA "to issue a policy that carries out an operative provision of the FPASA." *Nebraska v. Su*, 121 F.4th 1,

---

[3] Contrary to the Panel opinion, numerous courts have given precedential effect to *Georgia v. President. See, e.g., Nebraska v. Su,* 121 F.4th 1, 8 (9th Cir. 2024); *Texas v. Trump,* 127 F.4th 606, 613 (5th Cir. 2022); *Texas v. Biden*, 694 F. Supp. 3d 851 (S.D. Tex. 2023).

9-10 (9th Cir. 2024) (disallowing increased minimum wage mandate under FPASA).

Also contrary to the Panel opinion here, *Nebraska v. Su* found Section 3703 provides no authority for a PLA mandate and instead "dictates only how agencies determine which bid on an individual solicitation is most advantageous" and "does not speak to the policies or terms that the agency may impose in any resulting contract." *Id.* at 11-12. As for section 3306, although the section allows agencies to "specify [their] needs," that "authority is not nearly as broad as the Government claims." *See id.* at 12. To invoke § 3306(a) as a grant of authority, the Government must maintain that "whatever terms the Government is trying to impose "are 'restrictive provisions or conditions' that still 'permit full and open competition.'" *Id.*

The Panel nevertheless concluded ABC's challenge under FPASA fails because the PLA mandate is "consistent with" FPASA. (Op. 19).[4] This conclusion again was erroneous and conflicted with *Georgia v. President,* which held "the President's authority should be based on a 'specific reference' [in] the [FPASA]." *Georgia v. President*, 46 F.4th at 1301 (quoting *Chrysler Corp. v. Brown*, 441 U.S.

---

[4] The Panel cited (Op. 20) *NASA v. Nelson*, 562 U.S. 134 (2011) to reject ABC's challenge under the major questions doctrine, even though *Nelson* has nothing to do with FPASA or the major questions doctrine. *Georgia v. President* properly applied the major questions doctrine to the FPASA. *Georgia v. President*, 46 F.4th at 1295-96.

281, 304 n.34 (1979)) (Plaintiffs found likely to succeed on the merits of their claim the President exceeded his authority under the FPASA where "no statutory provision" contemplated such a mandate).

The Panel rejected the idea that CICA's "full and open competition" requirement created an inconsistency between FPASA and the PLA mandate because the Panel rejected ABC's facial challenge under CICA. (Op. 19). But the majority in *Georgia v. Biden*, reached the opposite conclusion. *See also Nebraska*, 121 F.4th at 12 (finding a similar condition on bidding would "invariably impair competition in the market for federal contracting services."). For similar reasons fully expressed in *Nebraska*, 121 F.4th at 15-16 and ABC's previous briefs, the Panel erred by failing to enforce the Administrative Procedure Act's arbitrary and capricious standards in implementing the EO.

Rehearing *en banc* is therefore necessary to resolve the disconnect between the Panel decision and *Georgia v. Biden* and other holdings in this Circuit and beyond.

**B.    The Panel Erred in Rejecting ABC's First Amendment Claim, Again Requiring Rehearing *en banc*.**

The Panel erroneously concluded ABC's First Amendment Free Association challenge to the PLA mandate should fail on the merits. The Panel erred by conflating separate First Amendment doctrines and reaching an outcome inconsistent with previously decided cases in this Circuit dealing with Free

11

Association. The Panel primarily relied in this regard on *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024), a social media speech case that says nothing about proof of unconstitutional infringement of the right of free association.

The Panel incorrectly claimed ABC "never state[d], much less argue[d], that their members are engaged in any expressive activities." (Op. 22). To the contrary, ABC both stated and argued that its members engage in expressive activities favoring merit-based construction and open competition, which are adversely impacted by the PLA mandate. (*See* ABC Br. at 28) ("As specifically addressed in the *Road-Con* case, union association is a type of protected expressive association under the First Amendment…."). ABC filed numerous member affidavits to this effect in support of their motion for preliminary injunction, and in ABC's opening brief on appeal. (*Id.*, citing ABC Affidavits and member surveys summarizing the impact of the PLA mandate on members' ability to express opposition to forced union agreements); (*see also* Dist. Dkt. 18, Ex. 4, 6, 7, 8, 9).

ABC's opening brief also cited its members' affidavits for the proposition that the PLA mandate required ABC's members to compel their employees to associate with unions as a condition of award of construction work, thereby forcing them to aid and abet the infringement of their employees' rights under the Constitution. In this regard, the Court erred in refusing to consider this issue because ABC's reference to it was "unsupported." (Op. 24). The referenced affidavits provided all

the support that was needed for this argument. (*See* ABC Br. n. 7) (referring to Dist. Dkt. 18, and repeating an argument made in ABC's motion to the district court).

Also contrary to the Panel opinion, ABC fully identified the unconstitutional features of the Executive Order and the absence of any compelling interest supporting the EO's infringement on the Free Association rights of ABC's members. Meanwhile, as noted above, the Government pointed to no compelling interest supporting the PLA mandate that could not be achieved through less restrictive means. And again, as discussed above, the PLA mandate's "functionally meaningless" exceptions support no other result. *See also United States v. Stevens*, 559 U.S. 460, 480 (2010) ("We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly.").

The Panel was also mistaken in interpreting ABC's argument as being that "any form of compelled interaction with a union is unconstitutional." (Op. 22). Rather, ABC properly averred that the PLA mandate violates ABC's First Amendment rights because the mandate requires its members to enter binding agreements with unions, that compel the non-union contractors to subsidize and otherwise support unions, without any countervailing legitimate government interest in increased economy or efficiency.

ABC's filings certainly put the Court on notice of First Amendment concerns that have satisfied other courts in this Circuit. *See Mulhall v. Unite Local 355*, 618

13

F.3d 1279, 1287 (11th Cir. 2010) (holding that the First Amendment "presupposes a freedom not to associate with a union"; and "[I]t has long been recognized that such association for the purpose of advancing economic, as well as political or religious, interests falls within the protection of the First Amendment").

In *Janus v. AFSCME, Council 31*, 585 U.S. 878 (2018), cited by ABC in its opening brief, the Supreme Court expressly held: "Just as the First Amendment clearly guarantees the right to join a union…it presupposes a freedom not to associate with a union." 585 U.S. at 892. The *Janus* Court also cited *O'Hare Truck Service, Inc. v. City of Northlake*, 518 U.S. 712 (1996), in which the Supreme Court extended the right of free association to government contractors. *Janus* also made clear that compelling parties to subsidize unions itself infringes on the freedom to associate, which is exactly what has occurred under the Executive Order.

Likewise in *Road-Con Construction, Inc. v Philadelphia*, 120 F.4th 346 (3d Cir. 2024), a case dealing specifically with government-mandated PLAs, the Third Circuit held that contractors who are "forced to recognize a union as the exclusive representative of employees" necessarily suffer a redressable injury to their "legally protected First Amendment interest[s]." 120 F.4th at 355. The Panel erroneously ignored the *Road-Con* case, cited in ABC's appeal briefs, and failed to properly apply *Janus* or any of its progeny.

*Boy Scouts of America v. Dale*, 530 U.S. 640 (2000) [*BSA*], on which the Panel

14

relies (Op. 23), helps ABC, not the Government. In *BSA*, the Supreme Court explained: "The forced inclusion of an unwanted person in a group infringes the group's freedom of expressive association if the presence of that person affects in a significant way the group's ability to advocate public or private viewpoints." *BSA*, 530 U.S. at 648. The PLA mandate fails this test by forcing ABC members to hire workers from union hiring halls instead of their regular workforces, as a condition of performing government contracts. *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006) [*FAIR*] compels no other result, as it did not deal with forced union association, and did not impose any obligation on the plaintiffs to enter an agreement subsidizing unions at their own expense.

The Panel further relied on the concept that the government may place more restrictions on contractors when acting as a proprietor instead of a regulator. But the First Amendment still applies. That the Government may have interests as a proprietor does not mean the Government has any *compelling* interest allowing it to impinge on associational freedoms. The issue in *Nelson*, on which the Panel relies (Op. 23), was whether government background checks violated a constitutional informational privacy right. *Nelson*, 562 U.S. at 142. More to the point here is *O'Hare*, which squarely held that government contractors do not lose their First Amendment rights when they bid on government contracts. 518 U.S. at 722.

The *Boston Harbor* decision, on which the Panel also relies, is again off the

15

mark. The sole issue presented there was whether the National Labor Relations Act preempted state action – not present here – and the case never addressed the First Amendment. *See Bldg. & Constr. Trades Council v. Associated Builders & Contrs.*, 507 U.S. 218, 220 (1993). Notably, *Boston Harbor* left open a challenge arising under Section 8(d) of the NLRA, which ABC has also raised here. *See H.K. Porter Co. v. NLRB*, 397 U.S. 99 (1970). The Panel opinion rejected ABC's appeal on this ground on the unsupported premise that Section 8(d) exclusively restricts the NLRB from imposing union contracts on employers, yet somehow leaves the door open for other federal agencies to do the same thing. There is no indication of such a restriction in the *H.K. Porter* decision which relied on expressed Congressional concerns about the constitutionality of compelled union agreements. *Id*.

*En banc* rehearing of these issues is of extraordinary importance to all First Amendment challenges where freedom of association is at stake. Rehearing is urgently needed to restore compliance with the correct legal standards in this Circuit.

## V.    CONCLUSION

For each of the reasons discussed above, and in ABC's previous filings on these and related issues, the petition for rehearing *en banc* should be granted.

Dated: June 4, 2026

*/s/ Maurice Baskin*

Maurice Baskin
LITTLER MENDELSON, P.C.
815 Connecticut Ave., N.W.
Ste. 400
Washington, D.C. 20006
(202) 772-2526
(202) 842-0011 (Fax)
mbaskin@littler.com

Kimberly J. Doud
LITTLER MENDELSON, P.C.
111 N Orange Ave.,
Suite 1750
Orlando, FL 32801
407-393-2951
407-641-9263 (Fax)
kdoud@littler.com

*ATTORNEYS FOR PLAINTIFFS-APPELLANTS ABC*

17

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 40(d)(3)(A) because it contains 3,872 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Local Rule 40-4.

This brief complies with the typeface requirements of Federal Rules of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Times New Roman font, with double-spaced text and 1-inch margins on all sides.

*/s/ Maurice Baskin*
Maurice Baskin

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2026, the foregoing was filed with the Clerk of the United States Court of Appeals for the Eleventh Circuit electronically using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Maurice Baskin<br>Maurice Baskin