Case No. 25-11375-G

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

ASSOCIATED BUILDERS AND CONTRACTORS FLORIDA FIRST COAST
CHAPTER, and ASSOCIATED BUILDERS AND CONTRACTORS,
*Plaintiffs-Appellants,*

v.

GENERAL SERVICES ADMINISTRATION, ET AL.,
*Defendants-Appellees.*

_____

On Appeal from the United States District Court
For the Middle District of Florida
The Honorable Wendy Berger, Presiding
**3:24-cv-318-WWB-MCR**

_____

# BRIEF OF *AMICUS CURIAE* NATIONAL RIGHT TO WORK
# LEGAL DEFENSE FOUNDATION, INC., IN SUPPORT OF
# PLAINTIFFS-APPELLANTS' PETITION FOR REHEARING
# *EN BANC* AND REVERSAL

_____

William Messenger
c/o National Right to Work Legal
 Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, VA 22160
Tel. (703) 321-8510
Fax (703) 321-9319
wlm@nrtw.org

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

*Amicus Curiae* National Right to Work Legal Defense Foundation submits the following list of the trial judge, all attorneys, persons, associations of persons, firms, partnerships, and corporations with any known interest in the outcome of this appeal, including subsidiaries, conglomerates, affiliates and parent corporations, any publicly held company that owns 10% or more of the party's stock, and other identifiable legal entities related to a party. None of the companies identified below are publicly traded, nor are they owned by any publicly traded company.

1. American-Electrical Contracting, Inc., *Affiant for Appellants-Plaintiffs*;

2. Associated Builders and Contractors, *Appellant/Plaintiff*;

3. Associated Builders and Contractors First Florida Chapter, *Appellant/Plaintiff*;

4. Baskin, Maurice, *Counsel for Appellants/Plaintiffs*;

5. Bennett, Michael, *Affiant for Appellants/Plaintiffs*;

6. Berger, Hon. Wendy, *United States District Judge*;

7.  Blum, Matthew C., current FAR Council Chair, Acting Administrator, Office of Federal Procurement Policy, Office of Management and Budget, in his official capacity, *Appellee/Defendant*;

8.  Brassfield & Gorrie, LLC, *Affiant for Appellants/Plaintiffs*;

9.  Brubeck, Ben, *Affiant for Appellants/Plaintiffs*;

10.  Cianbro Companies, *Affiant for Appellants/Plaintiffs*;

11.  Clark, William F., Director, Office of Government-Wide Acquisition Policy, Office of Acquisition Policy, Office of Government-Wide Policy, General Services Administration, in his official capacity, *Appellee/Defendant*;

12.  Doud, Kimberly, *Counsel for Appellants/Plaintiffs*;

13.  Environmental Chemical Corporation, *Affiant for Appellants/Plaintiffs*;

14.  Farby, Lesley, *Counsel for Appellees/Defendants*;

15.  Ferguson, Matthew, *Affiant for Appellants/Plaintiffs*;

16.  General Services Administration, *Appellee/Defendant*;

17.  Gerardi, Michael, *Former Counsel for Appellees/Defendants*;

18.  Goodnature, Taisa, *Former Counsel for Appellees/Defendants*;

19. Harada, Christine J., former FAR Council Chair, Senior Advisor to the Deputy Director for Management, Office of Federal Procurement Policy, Office of Management and Budget, in her official capacity, *Appellee/Defendant*;

20. Haskell Company, the, *Affiant for Appellants/Plaintiffs*;

21. Hensel Phelps Construction Co., *Affiant for Appellants/Plaintiffs*;

22. Hoffman, Karin Tucker, *Affiant for Appellants/Plaintiffs*;

23. Interstate Sealant & Concrete, Inc., *Affiant for Appellants/Plaintiffs*;

24. Jackson, Karla S., Assistant Administrator for Procurement, National Aeronautics and Space Administration, in her official capacity, *Appellee/Defendant*;

25. JCM Associates, Inc., *Affiant for Appellants/Plaintiffs*;

26. Kehoe, Gregory W., *Counsel for Appellees/Defendants*;

27. Koses, Jeffrey A., Senior Procurement Executive, General Services Administration in his official capacity, *Appellee/Defendant*;

28. Laurie, James P., *Affiant for Appellants/Plaintiffs*;

29. Littler Mendelson, P.C., *Counsel for Appellants/Plaintiffs*;

30. M.C. Dean, Inc., *Affiant for Appellants/Plaintiffs*;

31. McReady III, James C., *Affiant for Appellants/Plaintiffs*;

32. Messenger, William L., *Counsel for Amicus Curiae National Right to Work Legal Defense Foundation*;

33. Murray, Brian, *Affiant for Appellants/Plaintiffs*;

34. National Right to Work Legal Defense Foundation, Inc. *Amicus Curiae;*

35. Niese, Bradley, Senior Procurement Executive/Deputy CAO, National Aeronautics and Space Administration in his official capacity, *Appellee/Defendant*;

36. Pattee, James, *Affiant for Appellants/Plaintiffs*;

37. Rhodes, Kevin, FAR Council Chair, Administrator, Office of Federal Procurement Policy, *Appellee/Defendant*;

38. Richardson, Monte C., *Magistrate Judge*;

39. Roth, Yaakov M., *Counsel for Appellees/Defendants*;

40. Scarborough, Charles W., *Counsel for Appellees/Defendants*;

41. Shumate, Brett A., *Counsel for Appellees/Defendants*;

42. Sment, Cheryl, *Affiant for Appellants/Plaintiffs*;

43.    Starnes, Justin, *Affiant for Appellant/Plaintiff*;

44.    Tenaglia, John M., Principal Director, Defense Pricing and Contracting, U.S. Department of Defense, in his official capacity, *Appellee/Defendant*;

45.    Vought, Russell, Director of the Office of Management and Budget, in his official capacity, *Appellee/Defendant*;

46.    Winik, Daniel, *Counsel for Appellees/Defendants*;

47.    Yencarelli, Dave, *Affiant for Appellants/Plaintiffs*;

48.    Young, Shalanda, former Director of Office of Management and Budget, in her official capacity, *Appellee/Defendant*.

Pursuant to Eleventh Circuit Rule 26.1-1, 26.1-2, and 26.1-3, counsel for *amicus curiae* hereby state as follows:

The National Right to Work Legal Defense Foundation, Inc. is a nonprofit corporation that has no parent corporation. It issues no stock, and therefore no publicly held corporation owns 10% or more of its stock.

Dated: June 11, 2026

/s/ William L. Messenger
William L. Messenger

*Counsel for the National Right to Work Legal Defense Foundation, Inc.*

C-5 of 5

## CIRCUIT RULE 40-3(b) CERTIFICATION

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decision(s) of the Supreme Court of the United States or the precedents of this circuit and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court: *Georgia v. President of the U.S.*, 46 F.4th 1283 (11th Cir. 2022); *Nebraska v. Su*, 121 F.4th 1 (9th Cir. 2024); *Kentucky v. Biden*, 57 F.4th 545 (6th Cir. 2023).

I express a belief, based on a reasoned and studied professional judgment, that this appeal involves one or more questions of exceptional importance: specifically whether the executive order mandating project labor agreements on large federal construction projects violates the Federal Property and Administrative Services Act, National Labor Relations Act, Competition in Contracting Act, and First Amendment.

Dated: June 11, 2026

/s/ William L. Messenger
William L. Messenger

*Attorney of record for the National Right to Work Legal Defense Foundation, Inc.*

i

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ............................................................... C-1

CIRCUIT RULE 40-3(b) CERTIFICATION ...............................................i

TABLE OF CITATIONS .............................................................iv

IDENTITY AND INTEREST OF AMICUS CURIAE .............................1

STATEMENT OF THE ISSUE ASSERTED AS REQUIRING *EN BANC* CONSIDERATION .......................................................2

STATEMENT OF ANY FACTS NECESSARY TO ARGUMENT OF THE ISSUES ...................................................................2

SUMMARY OF ARGUMENT .................................................................3

ARGUMENT .........................................................................4

    A.    The panel opinion's interpretation of the Property Act conflicts with *Georgia* and with decisions by the Sixth and Ninth Circuits ........................................................4

    B.    The panel opinion's interpretation of the Property Act cannot be squared with the National Labor Relations Act ..........9

CONCLUSION .......................................................................13

CERTIFICATE OF COMPLIANCE.......................................................14

ii

CERTIFICATE OF SERVICE................................................................15

# TABLE OF CITATIONS

**Case**                                                                 **Page(s)**

*Bldg. & Constr. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc.,*
507 U.S. 218 (1993) ....................................................................... 11, 12

*Bradford v. U.S. Dep't of Lab.,*
101 F.4th 707 (10th Cir. 2024) ...........................................................7

*Chamber of Commerce v. Brown,*
554 U.S. 60 (2008) ..............................................................................12

*Georgia v. President of the United States,*
46 F.4th 1283 (11th Cir. 2022) ................................................. 3, 4, 7, 8

*Harris v. Quinn,*
573 U.S. 616 (2014) ...............................................................................1

*H.K. Porter Co., Inc. v. NLRB,*
397 U.S. 99 (1970) ..............................................................................10

*Janus v. AFSCME, Council 31,*
585 U.S. 878 (2018) ...............................................................................1

*Kentucky v. Biden,*
23 F.4th 585 (6th Cir. 2022) .............................................................6, 8

*Kentucky v. Biden,*
57 F.4th 545 (6th Cir. 2023) .................................................................6

*Louisiana v. Biden,*
55 F.4th 1017 (5th Cir. 2022) ...............................................................7

*Marks v. United States,*
430 U.S. 188 (1977) ...............................................................................6

iv

## TABLE OF CITATIONS (continued)

**Case**                                                                                    **Page(s)**

*Nash v. Florida Indus. Comm'n,*
  389 U.S. 235 (1967) ...............................................................................9

*Nebraska v. Su,*
  121 F.4th 1 (9th Cir. 2024).................................................................7, 8

*NLRB v. Jones & Laughlin Steel Corp.,*
  301 U.S. 1 (1937) .................................................................................9

*UAW-Labor Employment & Training Corp. v. Chao,*
  325 F.3d 360 (D.C. Cir. 2003).............................................................7

*Wisconsin Dept. of Industry v. Gould Inc.,*
  475 U. S. 282, 288–89 (1986) ............................................................12

**Statutes**
29 U.S.C. §§ 151 *et seq.*...........................................................................2
29 U.S.C. § 158(d).................................................................................9
29 U.S.C. § 158(e) ................................................................................9
29 U.S.C. § 158(f).................................................................................9
40 U.S.C. §§ 101-1315 ..........................................................................3
40 U.S.C. § 121(a)....................................................................... 4, 5, 7, 8
Pub. L. No. 80-101, 61 Stat. 136 (1947) ................................................11
Pub. L. No. 81-152, 63 Stat. 377 (1949) ................................................11

**Regulations, Rules and Other Authorities**
Fed. R. App. P. 29(a)(4)(E) ....................................................................7
Fed. R. App. P. 29(b)..............................................................................7

Executive Order 14063, "Use of Project Labor Agreements for Federal
Construction Projects," 87 Fed. Reg. 7363 (Feb. 9, 2022) .......................1

Federal Acquisition Regulation: Use of Project Labor Agreements for
Federal Construction Projects, 88 Fed. Reg. 88708 (Dec. 22, 2023) ........1

## IDENTITY AND INTEREST OF AMICUS CURIAE

Since 1968, the National Right to Work Legal Defense Foundation, Inc. has been the nation's leading litigation advocate for employee freedom to choose whether to associate with unions. Foundation attorneys have represented individuals in many cases to protect their right to refrain from subsidizing unions. *E.g.*, *Janus v. AFSCME, Council 31*, 585 U.S. 878 (2018); *Harris v. Quinn*, 573 U.S. 616 (2014).

The Foundation has an interest in this case because it concerns whether the federal government can lawfully require construction workers to abide by union project labor agreements (PLAs) to work on certain projects. Under the "PLA Rule" at issue,[1] nonunion employees will have to accept unwanted union representation; pay union dues in non-Right to Work states; obtain referrals from union hiring halls; and work under unfamiliar and inefficient union work rules. Because few nonunion workers and merit shop contractors will stomach these intolerable conditions,

---

[1] "PLA Rule" refers to Executive Order 14063, "Use of Project Labor Agreements for Federal Construction Projects," 87 Fed. Reg. 7363 (Feb. 9, 2022) and its implementing regulation, "Federal Acquisition Regulation: Use of Project Labor Agreements for Federal Construction Projects," 88 Fed. Reg. 88708 (Dec. 22, 2023).

the PLA Rule effectively excludes from many federal construction projects employees and contractors who want to exercise their rights under the First Amendment and National Labor Relations Act (NLRA), 29 U.S.C. §§ 151 *et seq.*, to not associate with unions.

The Foundation has moved for leave to file this brief with an accompanying motion made pursuant to Fed. R. App. P. 29(b) and 11th Cir. R. 29-3. The Foundation certifies, under Fed. R. App. P. 29(a)(4)(E), its brief was not written in whole or in part by counsel for any party, that no party or party's counsel made a monetary contribution to the preparation and submission of this motion and brief, and that no person or entity, other than the Foundation, has made such a monetary contribution.

## STATEMENT OF THE ISSUE ASSERTED AS REQUIRING *EN BANC* CONSIDERATION

The Foundation adopts by reference the statement of the issue set forth in Plaintiff-Appellants Associated Builders & Contractors Florida First Coast Chapter's (ABC's) petition for rehearing *en banc*.

## STATEMENT OF ANY FACTS NECESSARY TO ARGUMENT OF THE ISSUES

The Foundation adopts by reference the statement of facts set forth in ABC's petition for rehearing *en banc*.

2

## SUMMARY OF ARGUMENT

The Court should rehear this case *en banc* because the panel failed to follow *Georgia v. President of the United States*, 46 F.4th 1283 (11th Cir. 2022), which correctly interpreted the Federal Property and Administrative Services Act (Property Act), 40 U.S.C. §§ 101-1315, to grant the President only limited authority to issue procedural contracting regulations. In *Georgia*, Judge Grant rejected the notion that "Congress has granted the President complete authority to control the federal contracting process in a way he thinks is economical and efficient, subject only to certain statutory limitations." 46 F.4th at 1298.

The panel opinion's contrary interpretation of the Property Act cannot be reconciled with *Georgia* or with decisions from the Sixth and Ninth Circuits. The Court should resolve this conflict, and adopt a narrow interpretation of the Property Act, because the panel opinion gives the executive branch boundless authority to create policies governing federal contractors and their employees.

This case illustrates the point. The panel found the Property Act grants the President authority to dictate the labor relations of federal contractors and their employees. Nothing in the Act grants the President

this considerable authority. Indeed, Congress decided to deny the agency it granted authority to regulate private labor relations—the National Labor Relations Board (NLRB)—the power to compel employers to enter into union agreements. The notion that Congress granted the federal government this same power *sub silentio* in the Property Act is untenable and should be rejected by the Court.

## ARGUMENT

**A.    The panel opinion's interpretation of the Property Act conflicts with *Georgia* and with decisions by the Sixth and Ninth Circuits.**

1. In *Georgia*, the plaintiffs alleged the Property Act did not give the President authority to impose a vaccine policy on federal contractors. 46 F.4th at 1289. The Court, in an opinion by Judge Grant, found the plaintiffs likely to succeed on this claim. *Id*. There, as here, the President relied on this language in § 121(a) of the Property Act: "The President may prescribe policies and directives that the President considers necessary to carry out this subtitle. The policies must be consistent with this subtitle." 40 U.S.C. § 121(a).

Judge Grant's opinion correctly found the first sentence only grants the President authority to carry out "the provisions in a specified part of the U.S. Code," which are "quite specific in setting out the procurement-

4

related authority of the GSA Administrator, executive agencies, and other officials." 46 F.4th at 1293. "So § 121(a) generally grants the President the power to instruct those actors on how to exercise their statutory authority." *Id.* "The second constraint on the President's authority is the requirement that his policies be 'consistent with this subtitle,'" which similarly means "[t]he President must stay within the confines of the Act." *Id.* at 1294.

"In sum, the [Property] Act gives the President the authority to direct subordinate executive actors as they carry out its specific provisions; directing them to go beyond the statute's boundaries would neither 'carry out' the Act nor be 'consistent with' it." *Id.* at 1295 (quoting 40 U.S.C. § 121(a)). Thus, "[a] presidential directive can stand only if those subordinate officials have the statutory authority that they are told to exercise." *Id.* at 1295.

In contrast to the panel opinion, Judge Grant found the Act's "delegation to carry out those provisions does not grant the President free-wheeling authority to issue any order he wishes relating to the federal government's procurement system." *Id.* at 1293. Under the Act, "[t]he President cannot issue policies that require [federal] officials to take

steps outside the Act or contrary to the Act—however useful such steps may appear." *Id.* at 1294.

Judge Edmondson concurred "in the result Judge Grant reaches for this interlocutory appeal." *Id.* at 1308 (Edmondson, concurring the result). Judge Edmondson wrote that "[a]fter looking at the briefs, precedents, and other authorities, I *easily believe* that plaintiffs have a reasonable chance to succeed on the merits in the case underlying this interlocutory appeal." *Id.* (emphasis added). This language sufficiently converges with Judge Grant's opinion to grant it precedential value under *Marks v. United States*, 430 U.S. 188 (1977). Indeed, given the merits of the case turned on whether the Property Act gives the President limited authority to instruct federal officials concerning their procurement duties or "freewheeling authority to issue any order he wishes" for federal contractors, *id.* at 1293, it is difficult to see how Judge Edmondson could have "easily" found plaintiffs likely to succeed on the merits without supporting Judge Grant's interpretation of the Act.

The Sixth and Ninth Circuits interpret the Property Act in the same way as Judge Grant's opinion. *Nebraska v. Su*, 121 F.4th 1, 7–10 (9th Cir. 2024); *Kentucky v. Biden*, 57 F.4th 545, 551–55 (6th Cir. 2023); *Kentucky*

*v. Biden*, 23 F.4th 585, 603–10 (6th Cir. 2022); *but see Bradford v. U.S. Dep't of Lab.*, 101 F.4th 707 (10th Cir. 2024) (adopting expansive interpretation of the Property Act).[2] As the Ninth Circuit put it: "§ 121 does not give the President unrestrained authority to issue any procurement policy that he desires. The President can only use § 121 to issue a policy that carries out an operative provision of the [Property Act]." *Nebraska*, 121 F.4th at 9.

The panel opinion reached a different conclusion, finding that "[t]he statutory text grants the President substantial discretion in specifying those conditions as he 'considers necessary.'" (Op. 17) (quoting 40 U.S.C. § 121(a)). The panel opinion claims "the Property Act requires a flexible understanding of necessity because it gives the President the authority to take actions that *he* considers necessary." (Op. 18).

2. The panel opinion's sweeping interpretation of the Property Act is inconsistent with *Georgia* and creates a circuit split with the Sixth and Ninth Circuits. The Court should resolve this conflict *en banc* because

---

[2] The D.C. Circuit and Fifth Circuit take a middle-ground approach. They analyze if there is a "close nexus" between a policy and the government's interest in efficient contracting. *See Louisiana v. Biden,* 55 F.4th 1017, 1026 (5th Cir. 2022); *UAW-Labor Employment & Training Corp. v. Chao*, 325 F.3d 360, 366 (D.C. Cir. 2003).

*Georgia*, *Nebraska v. Su,* and *Kentucky v. Biden* are correct on the merits.

It also is important for the Court to rein in the panel's broad interpretation of the Act because it grants the President almost plenary authority to create and impose policies on federal contractors and their employees. As the Sixth Circuit stated in *Kentucky v. Biden*:

> [I]f the government's interpretation is correct, does the Property Act not confer a de facto police power upon the President to dictate the terms and conditions of one-fifth of our workforce's lives? The government has never reckoned with the implications of its position or proposed any limiting principle to allay our concerns.

23 F.4th at 608. The same can be said of the panel opinion.

The threat of overreach is not hypothetical. Presidents have already displayed a proclivity for misusing the Property Act to unilaterally impose their policy agendas on federal contractors and their employees. This includes imposing vaccine and minimum-wage mandates under the pretext that these policies were related to procuring goods or services. S*ee Georgia,* 46 F.4th at 1308; *Nebraska v. Su*, 121 F.4th at 4–5. The panel opinion opens the floodgates to this type of conduct.

It is difficult to believe that Congress, in two generic sentences in § 121(a) of the Property Act, gave the President carte blanche to dictate

8

the employment and labor policies of all federal contractors. This is especially true where, as here, Congress denied the federal agency it granted authority to regulate private labor relations any power to compel employers to enter into union agreements.

**B.    The panel opinion's interpretation of the Property Act cannot be squared with the National Labor Relations Act.**

1. The NLRA "is a comprehensive code passed by Congress to regulate labor relations in activities affecting interstate and foreign commerce." *Nash v. Florida Indus. Comm'n*, 389 U.S. 235, 238 (1967). This includes in the construction industry. *See* 29 U.S.C. §§ 158(e–f).

A bedrock principle of the NLRA is that, while the law requires bargaining between employers and unions, it does not require they enter into agreements with one another. *See* 29 U.S.C. § 158(d). In 1937, the Supreme Court held the NLRA to be constitutional partially because "[t]he Act does not compel agreements between employers and employees." *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 45 (1937). Congress made this policy express in 1947 by enacting NLRA Section 8(d), which states the obligation to bargain collectively "does not compel either party to agree to a proposal or require the making of a concession." 29 U.S.C. § 158(d). This is a "fundamental limitation" on the NLRA because "[t]he

9

object of this Act was not to allow governmental regulation of the terms and conditions of employment, but rather to ensure that employers and their employees could work together to establish mutually satisfactory conditions." *H.K. Porter Co. v. NLRB,* 397 U.S. 99, 103–104 (1970).

In *H.K. Porter Co.,* the Supreme Court held the NLRA does not empower the NLRB to require employers to enter into union agreements even as a remedial matter. *Id.* at 108–09. The Court explained that "allowing the Board to compel agreement when the parties themselves are unable to agree would violate the fundamental premise on which the Act is based—private bargaining under governmental supervision of the procedure alone, without any official compulsion over the actual terms of the contract." *Id.* at 108.

2. The foregoing strongly suggests that Congress did not give the federal government authority in the Property Act to compel employers to enter into union contracts. Congress chose to regulate labor relations with the NLRA and to grant the NLRB authority to enforce that law. Congress did not give the President and FAR Council authority in the Property Act to effectively make up their own scheme of labor regulation

for federal contractors, much less create a scheme that violates a basic premise of federal labor policy.

The timeline reinforces this conclusion. Congress enacted Section 8(d) of the NLRA in 1947 and the Property Act in 1949. *See* Pub. L. No. 80-101, 61 Stat. 136 (1947); Pub. L. No. 81-152, 63 Stat. 377 (1949). It strains credulity to believe that Congress granted the FAR Council a groundbreaking power over labor relations in 1949 that it expressly denied to the NLRB only two years before in 1947.

3. The panel opinion missed this point when claiming that, under the Supreme Court's "*Boston Harbor*" decision, the NLRA does not preempt state-imposed project labor agreements when the state acts as a market participant. (Op. 27–28) (citing *Bldg. & Constr. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218 (1993)). The panel greatly overstates the breadth of *Boston Harbor* because: (1) the Supreme Court expressly declined to address the impact of NLRA Section 8(d), 507 U.S. at 232 n. 2; and (2) here the federal

government is acting as a regulator, and not as a market participant, with its across-the-board PLA Rule.[3]

More importantly for purposes of this brief, *Boston Harbor* has no relevance to whether the Property Act gives the federal government authority to issue the PLA Rule. In *Boston Harbor*, there was no question the state agency had the power under state law to require a PLA on the project at issue. The only question was whether the NLRA preempted the state agency from exercising a power it otherwise possessed.

The threshold question here is whether the Property Act gives the executive branch the power to issue the PLA Rule in the first instance. As discussed, the answer is "no" because Congress' decision to deny the federal government authority to require employers to enter into union

---

[3] *Boston Harbor* concerned whether the NLRA preempted a state agency from requiring a PLA on *one* construction project. The Supreme Court answered in the negative because the agency acted "as a market participant with no interest in setting policy" and its action was "not tantamount to regulation or policy making." *Id.* at 229–30. The PLA Rule is not a one-off act of market participation. It is regulation that applies to all federal construction projects valued at over $35 million. The fact that it concerns procurement does not change its regulatory nature. *See Chamber of Commerce v. Brown*, 554 U.S. 60, 66 (2008); *Wisconsin Dept. of Industry v. Gould Inc.*, 475 U. S. 282, 288–89 (1986).

contracts under the NLRA strongly suggests Congress did not grant the government this power in the Property Act.

## CONCLUSION

The Court should grant the petition for rehearing *en banc*.

Dated: June 11, 2026

Respectfully submitted,

/s/ William Messenger
William L. Messenger
c/o National Right to Work Legal
 Defense Foundation, Inc.
8001 Braddock Rd., Suite 600
Springfield, VA 22160
wlm@nrtw.org

*Counsel for the National Right to Work Legal Defense Foundation, Inc.*

13

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the Contents and Form requirements of Fed. R. App. P. 29(a)(4) and 11th Cir. R. 29-2; 11th Cir. R. 29-3; and 11th Cir. R. 40-3.

2. This brief complies with the type-volume limitation of Fed. R. App. P. 29(b)(4) because it contains 2,512 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 29-3.

3. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it uses Century Schoolbook 14-point type face through-out, which is proportionally spaced and includes serifs.

Dated: June 11, 2026

/s/ William Messenger
William Messenger

*Counsel for the National Right to Work
Legal Defense Foundation, Inc.*

14

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d), I certify that on June 12, 2026, I electronically filed the foregoing Amicus Curiae Brief of the National Right to Work Legal Defense Foundation with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that the CM/ECF system will accomplish service on them.

Dated: June 11, 2026

/s/ William Messenger
William Messenger

*Counsel for the National Right to Work Legal Defense Foundation, Inc.*

15